IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BENJAMIN SMITH, | : | CIVIL ACTION NO. **4:CV-07-1079** |
| | : | |
| Plaintiff | : | (Judge Jones) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| UNITED STATES OF AMERICA, et al., | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

**I. Background**.

The Plaintiff, Benjamin Smith, formerly an inmate at the United States Penitentiary at Canaan

("USP-Canaan"), filed, *pro se,* this *Bivens*[1] action pursuant to  28 U.S.C. § 1331, on June 15, 2007.

Plaintiff names as Defendants with respect to his *Bivens* action twenty (20)  individuals, sixteen (16)

of which are employed by the Federal Bureau of Prisons ("BOP") at USP-Canaan, namely Warden

Cameron Lindsay, Corrections Officer ("C/O") Bossick, Counselor Gubbiotti, Dr. Odelda Dalmasi,

Captain Frank Lara, Scott Dodrill, Mr. Dale, C/O Palmer, Frank Karam, Mrs. Erickson, Lt. Clookey,

Mr. Symonsen, C/O Wagner, Mr. Coleman, Mr. Kizziah, and Registered Nurse Fashanna.  Plaintiff

also names three (3) private Defendants, namely the Centric Store, Snack Legends, and Keefe

Supply.  Plaintiff also names the United States of America as a Defendant.  Plaintiff has also filed a

motion for leave to proceed *in forma pauperis.* (Doc. 2).

---

[1]*Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999 (1971).
    Plaintiff correctly indicates that this is  a  *Bivens* action as he seeks monetary damages from federal officials for alleged violations of his Constitutional rights. Doc. 1, p. 1, ¶ 1.
    Plaintiff is currently confined at FCI-Ray Brook.  However, all of Plaintiff's claims arose while he was confined at USP-Canaan.

## II. Allegations of Complaint.

Since Plaintiff's allegations are so thoroughly detailed below, in our discussion of his claims, we shall not repeat them here.

## III. PLRA

The Prison Litigation Reform Act of 1995,[2] (the "PLRA"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.[3]  Specifically, § 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any
> portion thereof, that may have been paid, the
> court shall dismiss the case at any time if the
> court determines that (A) the allegation of
> poverty is untrue; or (B) the action or appeal
> (i) is frivolous or malicious; (ii) fails to
> state a claim on which relief may be granted;
> or (iii) seeks monetary relief against a
> defendant who is immune from such relief.

We shall discuss all of Plaintiff's claims against each Defendant below.

## IV. Motion to Dismiss Standard.

In considering whether a pleading states an actionable claim, the court must accept all material allegations of the complaint as true and construe all inferences in the light most favorable

---

[2]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

[3]The Plaintiff completed an application to proceed *in forma pauperis* and authorization to have funds deducted from his prison account.  The court then issued an administrative order directing the warden to commence the withdrawal of the full filing fee due the court from the Plaintiff's prison trust fund account.

to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 44-46 (1957); *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir. 1988). A complaint that sets out facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Estelle v. Gamble*, 429 U.S. 97, 107-108 (1976).

**V. *Bivens.***

Under *Bivens*, the District Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 to entertain an action brought to redress alleged federal constitutional or statutory violations by a federal actor under *Bivens, supra*. Pursuant to *Bivens*, "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978). A *Bivens*-style civil rights claim is the federal equivalent of an action brought pursuant to 42 U.S.C. § 1983 and the same legal principles have been held to apply. *See, Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir. 1975); *Veteto v. Miller*, 829 F.Supp. 1486, 1492 (M.D. Pa. 1992); *Young v. Keohane*, 809 F.Supp. 1185, 1200 n. 16 (M.D. Pa. 1992). In order to state an actionable *Bivens* claim, a plaintiff must allege that a person has deprived him of a federal right, and that the person who caused the deprivation acted under color of federal law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Young v. Keohane*, 809 F.Supp. 1185, 1199 (M.D. Pa. 1992).

## VI. Discussion.

### 1. Defendant Coleman

While Plaintiff names Mr. Coleman as a Defendant (Doc. 1, p. 2), he fails to mention this Defendant at all in his pleading.   Since Plaintiff does not state any personal involvement of Defendant Coleman with respect to an alleged violation of any of Plaintiff's constitutional rights, this Defendant should be dismissed. *See Sutton v. Rasheed*, 323 F. 3d 236, 249 (3d Cir. 2003).  In order for a civil rights action to be viable, Plaintiff must name a Defendant and allege how that Defendant has infringed upon his/her civil rights.   In the case at bar, Plaintiff has named Mr. Coleman as a Defendant.  Plaintiff has not, however, alleged any actions by Defendant Coleman that infringed on any of his constitutional rights.   Thus, it is recommended that Defendant Coleman be dismissed under § 1915(e)(2)(B)(ii) for failure to state a claim.

### 2. Claims Against Defendants Keefe Supply, Snack Legends, Centric Store, and Dale

Plaintiff alleges that on or about June 13, 2005, he purchased defective Snack Legend Duplex Cookies ("cookies") from the U.S.P. Canaan Commissary. (Doc. 1, p. 2).  Plaintiff avers that the cookies were defective, containing "what appeared to glass," when they left the factory. (*Id.*)  Plaintiff does not state that the prison staff altered the factory wrapped cookies or opened them.   Plaintiff also complains that Defendant Dale, "Commissary Superviser/Manager (sic)," was negligent for continuing to order cookies for the Centric Store in the prison from Keefe Supply after Defendant Dale was made aware that honey buns he had ordered were allegedly moldy. (Doc. 1, p. 2).  Plaintiff

does not state that Defendant Dale was previously aware of any factory defects with the cookies.[4]

Plaintiff styles his action as being filed pursuant to 28 U.S.C. § 1331 as well as § 402A of Restatement

(Second) of Torts.[5] (Doc. 1, p. 1).  Plaintiff seeks $10 million in relief from Defendants Keefe Supply,

Snack Legends, and Centric Store for product liability.  However, Plaintiff cannot pursue a private

tort claim against private entities in a federal civil rights action. *See Oriakhi v. Wood*, 2006 WL

859543, (M.D. Pa.).  As this Court noted, "In [*Bivens*], the Supreme Court recognized a private cause

of action to recover damages against a federal agent for violations of constitutional rights." *Wood* at

* 1.  Nor can Plaintiff name private entities as Defendants in his *Bivens* actions. *See Correctional*

*Services Corp. v. Malesko*, 534 U.S. 61, 63, 122 S.Ct. 515, 517 (2001) (holding that *Bivens* should

not be extended to allow recovery against a private corporation under contract with the federal

Bureau of Prisons).   In order for Plaintiff to seek relief from private Defendants Keefe Supply and

Snack Legends, Plaintiff must file a separate civil tort action, under § 402A Restatement (Second) of

---

[4]We fail to see any possible relation between moldy honey buns and cookies that contained "what appeared to be glass" other than they were both ordered from the same supplier.

[5]§ 402A. Special Liability Of Seller Of Product For Physical Harm To User Or Consumer
  (1) One who sells any product in a defective condition unreasonably
  dangerous to the user or consumer or to his property is subject to liability
  for physical harm thereby caused to the ultimate user or consumer, or to
  his property, if
  (a) the seller is engaged in the business of selling such a product, and
  (b) it is expected to and does reach the user or consumer without
  substantial change in the condition in which it is sold.
  (2) The rule stated in Subsection (1) applies although
  (a) the seller has exercised all possible care in the preparation and sale of
  his product, and
  (b) the user or consumer has not bought the product from or entered into
  any contractual relation with the seller.

Torts, against these Defendants.  Moreover, Defendant Centric Store, even if it is operated by prison staff, is not a person capable of being sued in a *Bivens* suit. *See FDIC v. Meyer,* 510 U.S. 471, 472, 114 S.Ct. 996, 999 (1994).  We shall recommend that the Plaintiff's product liability claims against Defendants Keefe Supply and Snack Legends be dismissed.  We shall also recommend that Defendant Centric Store be dismissed.

Plaintiff also seeks $100,000 in damages as a result of the alleged negligence by Defendant Dale.  As stated above, Plaintiff alleges Defendant Dale was negligent for continuing to order cookies from Keefe Supply after he was aware of alleged moldy honey buns from this supplier.[6]  Plaintiff filed this case pursuant to *Bivens*, 28 U.S.C. § 1331, as well as § 402A Restatement Second of Torts, alleging that Defendant Dale was negligent (Doc. 1, p. 3).  As discussed below, negligence cannot be the basis of a civil rights suit.  Under *Bivens*, Plaintiff must allege that a federal official violated his constitutional rights.  *Wood, supra.*  Further, Plaintiff fails to state an Eight Amendment claim against Defendant Dale.  Defendant Dale's stated alleged negligent conduct clearly does not amount to an Eighth Amendment violation.  Thus, we shall recommend that Defendant Dale be dismissed.

Moreover, even if Plaintiff is construed as raising a negligence claim against Defendant Dale under the Federal Tort Claims Act, 28 U.S.C. § 1346 and § 2680, he should file this action against

---

[6]Plaintiff alleges negligence against Defendant Dale even though the Snack Legends cookies were pre-packaged and the alleged "glass" was inside the cookie.  Plaintiff was not aware of the "glass" until after he unwrapped, removed, and bit into the cookie. (Doc. 1, p. 2).  As stated, it is not alleged that Defendant Dale opened the cookies or altered them prior to Plaintiff's purchase.  Thus, it is clear that Defendant Dale was not aware of any defect with the cookies Plaintiff purchased and that Defendant Dale did not alter the pre-packaged cookies prior to Plaintiff's purchase.

the United States of America after he exhausts his tort claim with the BOP.[7]   The provisions of the Federal Tort Claims Act ("FTCA") govern all claims against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment.  28 U.S.C. §2675 (a).  Plaintiff here raises negligence claims against Defendant Dale, "Commissary Superviser/Manager (sic)." (Doc. 1, p. 3).  Thus, it appears that Plaintiff, in part, is advancing an FTCA claim in his case.  To the extent that Plaintiff is raising an FTCA claim, he should pursue this claim in a separate action against the only proper Defendant, *i.e.* United States, after he exhausts his administrative remedies with the BOP.

     With respect to Plaintiff's FTCA claims, the only proper Defendant is the United States and not the individually named Defendant employee (Dale) of the BOP.  *See* 28 U.S.C. §2679 (b) and (d)(1).  Therefore, it is recommended that the negligence claim against Defendant Dale should be dismissed pursuant to § 1915(e)(2)(B)(ii).  It is also recommended that Plaintiff proceed with his negligence claim against the United States of America in a separate FTCA action after he has exhausted his administrative remedies with the BOP.

---

[7]In his Complaint, Plaintiff does not indicate whether he has exhausted his tort claim (SF 95) with the BOP.  It is required by the FTCA that Plaintiff exhaust his administrative remedies with respect to his tort claim with the applicable federal agency (here BOP) before filing an FTCA action in federal court. *See* 28 U.S.C. § 2401(b).

     Further, we note that we fail to see how Defendant Dale was negligent since there were no prior problems alleged with respect to the factory wrapped cookies and Plaintiff purchased the pre-packaged cookies with the glass allegedly inside the cookies.  The moldy honey buns certainly would not have put Defendant Dale on notice as to any alleged defects with the cookies.

7

Additionally, insofar as Plaintiff raises an Eight Amendment claim against Defendant Dale, it should be dismissed.  Plaintiff does not state that Defendant Dale denied him medical care after he ate the allegedly defective cookies.  Rather, Plaintiff only alleges that Defendant Dale was negligent in continuing to order cookies from Keefe Supply after he knew honey buns purchased from this supplier were moldy.  In order to state an actionable *Bivens* claim, a Plaintiff must allege that a person has deprived him of a federal right guaranteed by statute or the constitution, and that the person who caused the deprivation acted under color of federal law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).  It is well-settled that mere negligence on the part of federal actors is an insufficient basis to hold them liable in a civil rights action.  *Hudson v. Palmer*, 468 U.S. 517 (1984).  Therefore, the Plaintiff's negligence claim raised in his Complaint, against Defendant Dale, to the extent it is raised as a *Bivens* claim under the Eighth Amendment, is subject to dismissal for failure to state a claim.

### 3. *Eighth Amendment Denial of Medical Care Claim*

Plaintiff complains that after ingesting "glass" in the Snack Legends cookies he "went to medical for treatment" on "or about June 13, 2005." (Doc. 1, p. 2).  Plaintiff avers that eight days after his treatment, approximately June 21, 2005, he began to bleed from his rectum.  (*Id*.).  Plaintiff claims that "[a]fter requesting treatment from Mr. Symonsen at institutional triage and without examination Plaintiff's abdominal and anal pain and bleeding were dismissed." (*Id*.).  Plaintiff further alleges that "[f]ourteen days later after deliberately ignoring [his] complaints of pain and bleeding [he] was examined after the bleeding had subsided on July 10, 2005." (*Id*.).  Plaintiff claims that Dr. Dalmasi, who performed his second examination, was deliberately indifferent by "ordering a delay

of two weeks for treatment and examination" despite Plaintiff being examined previously for abdominal discomfort.  (*Id*.).  Plaintiff also avers that the United States was negligent "in failing to hire qualified staff to properly assess or treat Plaintiff's complaint of pain and suffering."  (*Id*.).  Plaintiff complains that "Mr. Symonsen was only an E.M.T. and was not professionally qualified to assess medical conditions."  (*Id*.).  We construe these allegations as claims against the United States, Mr. Symonsen, and Dr. Dalmasi for violating the Eight Amendment for not providing adequate medical care.

As discussed above, in order to state an actionable *Bivens* claim, a Plaintiff must allege that a person has deprived him of a federal right guaranteed by statute or the constitution, and that the person who caused the deprivation acted under color of federal law.  *See West* at 48.  Again, it is well-settled that mere negligence on the part of federal actors is an insufficient basis to hold them liable in a civil rights action.  *Hudson v. Palmer*, 468 U.S. 517 (1984).  Plaintiff alleges that the United States was negligent for hiring Mr. Symonsen because he was "only an E.M.T."[8]  However, the United States cannot be liable in a *Bivens* action for mere negligence.  Nor is the United States a proper party Defendant in a *Bivens* action, because "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 1000 (1994)(Citations omitted).  Therefore, the Plaintiff's negligence claim raised in this Complaint, against the United States of America, to the extent it is raised as a *Bivens* claim under the

---

[8]We note that Plaintiff's rectal bleeding did not allegedly begin until eight (8) days after Plaintiff was examined at "medical." (Doc. 1, p. 2).

Eighth Amendment, is subject to dismissal for failure to state a claim.[9]

Plaintiff claims that Defendant Dr. Dalmasi violated the Eighth Amendment by being deliberately indifferent to his medical treatment request, for rectal bleeding, despite previous treatment for abdominal discomfort. (Doc. 1, p. 2). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825 (1994) citing *Helling v. McKinney*, 509 U.S. 25 (1993); *Wilson v. Seiter*, 501 U.S. 294 (1991); *Estelle v. Gamble*, 429 U.S. 97 (1976). An inadequate medical care claim, as we have here, requires allegations that the prison official acted with "deliberate indifference to serious medical needs" of the plaintiff, while a prisoner. *Estelle*, 429 U.S. at 104 (1976); *Unterberg v. Correctional Medical Systems, Inc.*, 799 F. Supp. 490, 494-95 (E.D. Pa. 1992). The official must know of and disregard an excessive risk to inmate health or safety. *Farmer,* 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. "The question...is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health.'" *Farmer*, 511 U.S. at 843.

In order to state a viable Eighth Amendment claim, a prisoner must demonstrate that the Defendant was deliberately indifferent to his medical needs and that those needs were serious. *Estelle*, 429 U.S. at 106.

---

[9]As discussed above, Plaintiff must raise his negligence claims against the United States in an FTCA action after he exhausts his administrative tort claim with the BOP.

Mere disagreement as to the proper medical treatment does not support a claim of an Eighth Amendment violation. *Monmouth County Correctional Institution Inmates v. Lensaro*, 834 F.2d 326 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988); *see also Durmer v. O'Carroll*, 991 F. 2d 64, 67 (3d Cir. 1993) ('[T]he law is clear that simple medical malpractice is insufficient to present a constitutional violation."). As such, "[a] distinction must be made between a case in which the prisoner claims a complete denial of medical treatment and one where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment." *Nottingham v. Peoria*, 709 F. Supp. 542, 547 (M.D. Pa. 1988) *citing United States ex. rel. Walker v. Fayette County*, 549 F.2d 573, 575 n.2 (3d Cir. 1979).

Plaintiff admits that immediately after ingesting "glass" he was able to leave his "work" at USP Canaan and go to "medical for treatment." (Doc. 1, p. 2). Plaintiff complains that his Eighth Amendment rights were violated when Defendant Dr. Dalmasi allegedly "order[ed] a delay of two weeks [before treating him]."[10] (*Id*.). Plaintiff cannot claim a complete denial of medical treatment,

---

[10]It is not clear whether Plaintiff alleges Dr. Dalmasi denied him access to institutional triage, or if both Dr. Dalmasi and Mr. Symonsen dismissed Plaintiff's request for treatment independently. Plaintiff claims:

> [He] went to medical for treatment. Eight days later [he] began bleeding from his rectum. After requesting treatment from Mr. Symonsen at institutional triage and without examination [his] abdominal and anal pain and bleeding were dismissed. Fourteen days later after deliberately ignoring [Plaintiff's] complaints of pain and bleeding [he] was examined after the bleeding had subsided on July 10, 2005. In deliberate indeifference (sic) to Plaintiff having previously been treated for abdominal discomfort after ingesting 'glass' after eating the Snack Legend Cookie, Dr. Dalmasi, who performed the examination[,] was deliberately indifferent to [his] complaint of rectal bleeding by ordering a delay of two weeks for treatment and examination of [his] rectal bleeding.

(Doc. 1, p. 2).

however, because he was admittedly examined and treated immediately after ingesting what appeared to be glass. Rather, Plaintiff complains about the adequacy of his treatment by Defendants Symonsen and Dr. Dalmasi. Simply because Plaintiff disagrees with Defendant Symonsen's and Dr. Dalmasi's course of treatment after his rectal bleeding began does not constitute a constitutional violation.[11]   Although Plaintiff disputes the adequacy of the treatment he received, he clearly concedes that he was not denied treatment completely.[12]   Thus, to the extent that Plaintiff claims that Defendants Symonsen and Dr. Dalmasi violated his Eighth Amendment rights in failing to provide him with proper and timely follow up medical care, these Eighth Amendment claims should be dismissed.

Furthermore, in the case of *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988), the Court addressed whether the Plaintiff's alleged injuries rose to the level of being sufficiently serious for the purpose of establishing an Eighth Amendment violation.

---

[11]We note that the Complaint indicates Plaintiff's rectal bleeding stopped on its own less than two weeks after it began and that Plaintiff suffered no permanent or lasting injury.

[12]Plaintiff does not allege he was completely denied medical treatment for his rectal bleeding. Rather, he claims that the treatment for his rectal bleeding was delayed for two weeks by Dr. Dalmasi. Plaintiff avers that Dr. Dalmasi acted "in deliberate indifference to [his] having previously been treated for abdominal discomfort..." (Doc. 1, p. 2). As such, Plaintiff connects his initial treatment with his later treatment by Dr. Dalmasi. In so doing, Plaintiff admits that he was not completely denied medical treatment. Instead, Plaintiff claims that he had to wait too long for follow up care by Dr. Dalmasi. This amounts to a disagreement with Dr. Dalmasi as to when Plaintiff needed follow up care. As stated above, this does not violate the Eighth Amendment. *See Nottingham v. Peoria*, 709 F. Supp. 542, 547 (M.D. Pa. 1988) *citing United States ex. rel. Walker v. Fayette County*, 549 F.2d 573, 575 n.2 (3d Cir. 1979).

The *Monmouth County* case stated that:

> "A medical need is 'serious,' in satisfaction of the second prong of the *Estelle* test, if it is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Pace v. Fauver*, 479 F.Supp. 456, 458 (D.N.J. 1979), *aff'd*, 649 F.2d 860 (3d Cir. 1981); *accord Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D.N.H. 1977). The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment. For instance, *Estelle* makes clear that if 'unnecessary and wanton infliction of pain,' 429 U.S. at 103, 97 S.Ct. at 290, results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment. *See Id*, at 105, 97 S.Ct. at 291. In addition, where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious. (*Citations omitted*)."

*Monmouth County,* 834 F.2d at 347(3d Cir. 1987).

While Plaintiff alleges that Defendant Dr. Dalmasi acted in deliberate indifference to his condition, Plaintiff does not aver that his condition was serious. In *Monmouth, supra,* 834, F.2d at 347, the Court said that a medical need is serious if the delay or denial of health care results in "wanton infliction of pain, lifelong handicap or permanent loss." Although Plaintiff accused Snack Legend's product of causing "fear of death and psychological trauma" (Doc. 1, p. 2), Plaintiff never describes his pain as severe or claimed that Defendants Symonsen's and Dr. Dalmasi's alleged actions caused him excessive pain or permanent injury.[13] Moreover, Plaintiff's condition cannot be considered a "lifelong handicap or permanent loss" because his bleeding, admittedly, ended, at the most, two weeks after it began. *Monmouth*, *supra*, 834, F.2d at 347. (Doc. 1, p. 2). Plaintiff also admits that he was medically examined after the bleeding subsided on July 10, 2005. (*Id.*).

---

[13]In fact, the only adjective Plaintiff used for his abdominal pain in his Complaint was "discomfort." (Doc. 1, p. 2).

Regarding the *Estelle* test, Plaintiff's condition is not alleged to have been "serious" because it was not diagnosed by a physician as requiring treatment. *Monmouth County* at 347.  Plaintiff was examined after initially ingesting what appeared to be "glass" (Doc. 1, p. 2), and it appears as though he was medically cleared because he does not complain about continuing symptoms.  Eight days later, when Plaintiff claims he experienced rectal bleeding, he requested another medical examination, which was allegedly dismissed by Defendant Symonsen and delayed two weeks by Dr. Dalmasi. (*Id.*).  As stated, Plaintiff did not claim that he had a serious medical condition for which he was allegedly denied treatment.  Nor does Plaintiff claim that he suffered any permanent loss or injury as a result of the alleged delay of another examination.  Further, Plaintiff does not claim any severe pain, rather, he alleges only "discomfort."  (*Id.*).

Furthermore, Plaintiff's condition could not be considered so obvious that a lay person would recognize the need for a doctor's attention, because over eight days passed between the time Plaintiff allegedly ingested "glass" and the onset of his rectal bleeding, which appears to be his most serious condition claimed. (Doc. 1, p. 2).  While Plaintiff states that he suffered rectal bleeding for less than two weeks, he does not allege any permanent or lasting injury.  We take judicial notice that normal digestion is fully complete between 24 to 72 hours after ingestion.  *See* Dr. Michael Picco, *Digestion: How Long Does it Take?*, Mayo Clinic, August 8, 2006, http://www.mayoclinic.com/health/digestive-system/AN00896.  Therefore, it would not be obvious to a lay person that medical attention would be required for rectal bleeding eight days after ingesting glass.  Again, Plaintiff does not even allege that his pain was severe or wanton in his Complaint, using only the word "discomfort" to describe his condition. (Doc. 1, p. 2).  While the Eighth Amendment

is designed to protect inmates who are deprived of certain liberties and therefore cannot protect themselves, *Estelle* at 103, Plaintiff's allegations against Defendant Symonsen and Dr. Dalmasi do not rise to the standard of protection.   Plaintiff does not allege that he suffered any long-term impairment or permanent loss, and he states that he suffered rectal bleeding for less than two weeks. For the reasons stated above, we shall recommend that Plaintiff's Eight Amendment claims against Defendants Symonsen and Dr. Dalmasi be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Additionally, while Plaintiff names Mr. Symonsen as a Defendant (Doc. 1, p. 2), as noted above, it is unclear how this Defendant is alleged to have violated Plaintiff's constitutional rights. Plaintiff claims that he requested  treatment from Defendant Symonsen, but does not aver whether Defendant Dr. Dalmasi rejected this request when "ordering a delay of two weeks" or if Defendant Symonsen rejected the request himself.   If Plaintiff alleges Mr. Symonsen rejected his request, Plaintiff does not state a constitutional claim against Defendant Symonsen.  As discussed above, in order to state an Eighth Amendment denial of medical care claim a Plaintiff must allege deliberate indifference by a prison official.  *See Farmer*, *supra*.   Plaintiff does not state an Eighth Amendment denial of medical care claim against Defendant Symonsen because he does not allege any deliberate indifference by Defendant Symonsen.   Moreover, Plaintiff does not state a constitutional claim because he does not allege a lasting or permanent injury.  *See Monmouth*, *supra*.

If Plaintiff alleges that Dr. Dalmasi rejected his request for treatment at institutional triage, and not Defendant Symonsen, Plaintiff does not state an Eighth Amendment denial of medical care claim against Defendant Symonsen.   If Defendant Symonsen is not alleged to have rejected Plaintiff's request, Plaintiff does not state any personal involvement by Defendant Symonsen with respect to

15

an alleged violation of any of Plaintiff's constitutional rights.   Thus, this Defendant should be dismissed.  *See Sutton v. Rasheed*, 323 F. 3d 236, 249 (3d Cir. 2003).  In order for a civil rights action to be viable, Plaintiff must name a Defendant and allege how that Defendant has infringed upon his/her civil rights.  In the case at bar, Plaintiff has named Mr. Symonsen as a Defendant.  Plaintiff has not, however, alleged any actions by Defendant Symonsen that infringed on any of his constitutional rights.  Thus, it will be recommended that Defendant Symonsen be dismissed under § 1915(e)(2)(B)(ii) for failure to state a claim.  Furthermore, even if Plaintiff alleged that Defendant Symonsen misdiagnosed his ailment, as noted above, negligence is not a basis for a *Bivens* claim. *Davidsen v. O'Lone,* 752 F.2d 817 (3d Cir. 1984)**.**

### 4. Conspiracy Claim

Plaintiff contends that Defendants Kizziah and Lara conspired to order Defendant Clookey to fabricate a reason for placing him in the Special Housing Unit ("the Hole"). (Doc. 1, p. 4).  We construe this to allege a conspiracy to deprive Plaintiff of his Fourth Amendment right to due process of law on the parts of Defendants Kizziah, Lara, and Clookey.[14]  The Third Circuit in *Jones v. Maher*, Appeal No. 04-3993 (3d Cir. 2005), slip op. p. 5, stated that broad and conclusory allegations in a conspiracy claim are insufficient to state a viable claim.  (Citation omitted).  Also, the United States District Court for the Middle District of Pennsylvania, in *Flanagan v. Shively*, 783 F. Supp. 922, 928-29 (M.D. Pa. 1992), *aff'd.* 980 F. 2d 722 (3d Cir. 1992), *cert. denied* 510 U.S. 829 (1993), stated as follows:

---

[14]As discussed below, Plaintiff alleges that his placement in "the Hole" violated his right to due process. (Doc. 1, p. 3).

Bare conclusory allegations of "conspiracy" or "concerted action" will not suffice to allege a conspiracy.  The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred.  In *Waller v. Butkovich,* 584 F.Supp. 909, 931 (D.C.N.C. 1984), the district court outlined the pleading requirements in a conspiracy action.

> In most cases, a bare conclusory allegation of 'conspiracy' or 'concerted action' will not suffice.  The plaintiffs must expressly allege an agreement or make averments of 'communication, consultation, cooperation, or command' from which such an agreement can be inferred . . . (Citation omitted.) . . .  Allegations that the defendants' actions combined to injure the plaintiffs are not a sufficient basis from which to imply a conspiracy . . . (Citation omitted.)
> Additionally, the plaintiffs must make 'specific factual allegations connecting the defendant to the injury' . . . (Citations omitted.) . . .

In the case at bar, Plaintiff simply contends that Defendants Kizziah and Lara conspired to order Defendant Clookey to "fabricate a reason for seg (sic)." (Doc. 1, p. 4).  This conspiracy allegation is conclusory and is not viable because it is not supported by any facts or further allegations of how the conspiracy was formed.[15]  Plaintiff avers that Defendants Kizziah and Lara ordered Defendant Clookey to manufacture a basis for confinement, but he does not allege "communication, consultation, [or] cooperation." *Flanagan* at 928.  Moreover, Plaintiff does not allege that Defendant Clookey actually fabricated a reason for placing him in "the Hole."  Nor does Plaintiff state the allegedly fabricated reason he claims Defendant Clookey created.

---

[15]The entire allegation of conspiracy is only one sentence, or seventeen words, long. (Doc. 1, p. 4).

Moreover, Plaintiff does not state a constitutional claim with respect to the alleged false misconduct report filed by Defendant Clookey.  As the Court in *Wesley v. Dombrowski*, 2004 WL 1465650 *7 (E.D. Pa.), stated, "the filing of a false or unfounded misconduct charge against an inmate does not constitute a deprivation of a constitutional right.  *See Freeman v. Rideout*, 808 F.2d 949 (2d Cir. 1986), *cert. denied*, 485 U.S. 982, 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988); *Flanagan v. Shively*, 783 F.Supp. 922, 931-32 (M.D. Pa.), *aff'd* 980 F.2d 722 (3d Cir. 1992), *cert. denied*, 510 U.S. 829, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993).

In summary, to the extent that the Plaintiff claims that Defendants Kizziah, Lara, and Clookey were part of a conspiracy to deprive him of his constitutional rights, Plaintiff has failed to specify any involvement by these Defendants as required.   *See Flanagan, supra*.   Therefore, it will be recommended that Plaintiff's conspiracy claim against Defendants Kizziah, Lara, and Clookey be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).   Further, we will recommend that Defendant Clookey be dismissed entirely from this action since Plaintiff does not state any more claims against this Defendant.

### 5. Due Process Violation

Plaintiff alleges that on June 20, 2005, he was placed in "the Special Housing Unit (The Hole)" for possible involvement in a fight. (Doc. 1, p. 3).  Although Plaintiff "had[,] in fact[,] been attacked[,]" he avers that "the administration[,]" Defendants Cameron Lindsay, Frank Karam, and Frank Lara, determined Plaintiff would remain in the Special Housing Unit ("The Hole") pending a transfer. (*Id.*).  Plaintiff complains that, after attempting to transfer, he was not allowed a hearing to present evidence to challenge his placement in "the Hole." (*Id.*).  Plaintiff also complains that his

confinement is atypical as he is a "medium security prisoner who was segregated in the Hole at a high security pennitentiary (sic)." (*Id.*).   Moreover, Plaintiff alleges that placement in "the Hole" excluded him from consideration for an early release program such as a "Half Way House." (Doc. 1, p. 4).   Plaintiff avers that Defendant Scott Dodrill "directed that [he] be erroneously placed in the 10 month program." (*Id.*).   We construe these to be alleged violations of the Due Process Clause of the Fifth Amendment.

To analyze Plaintiff's due process claim, the first step is to decide whether he was deprived of a liberty or property interest protected by due process. *See* 7 U.S. 67 (1972). If not, it is not necessary to consider what process is due. *See Morrissey v. Brewer,* 408 U.S. 471 (1972). Thus, Plaintiff was entitled to due process only if he had a protected liberty interest in an appeal of his placement in "the Hole" and his housing classification.

With respect to Plaintiff's claim that he was not given a hearing to present evidence after his transfer appeal was denied, we do not find that Plaintiff has stated a liberty interest and thus find that he has not stated a due process violation.  Plaintiff's claims do not state that he had a "protected liberty interest" that was infringed by the Defendants' alleged actions.   "[T]hese interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to the Due Process Clause of its own force..., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). "[T]he baseline for determining what is 'atypical and significant'--the 'ordinary incidents of prison life'--is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his conviction in accordance with due process of law."

*Griffin v. Vaughn*, 112 F.3d 703, 706  (3d Cir. 1997) *quoting Sandin*, 515 U.S. at 486.

Plaintiff avers that the conduct of the stated Defendants caused him atypical segregation as a medium security prisoner in "the Hole" at a high security federal penitentiary.  Plaintiff seems to claim that the procedural safeguards of *Wolff v. McDonnell,* 418 U.S. 539 (1974), were not followed in his case.  In *Griffin*, the Court found that confinement of a prisoner in restrictive housing for fifteen (15) months did not implicate a constitutionally protected liberty interest.

Further, the Court in *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997), stated:

> Applying the precepts of *Sandin* to the circumstances before us, we conclude that the conditions experienced by Griffin in administrative custody did not impose on him "atypical and significant hardship," that he was thus deprived of no state created liberty interest, and that the failure to give him a hearing prior to his transfer to administrative custody was not a violation of the procedural due process guaranteed by the United States Constitution.

The *Griffin* Court concluded that, considering the reasons to transfer inmates from general population to administrative custody, such as inmates deemed to be security risks, stays in administrative custody for many months (*i.e.* as long as 15 months) are not uncommon.  *Id.* at p. 708.  Thus, the *Griffin* Court held that the inmate Griffin's transfer to and confinement in administrative custody "did not deprive him of a liberty interest, and that he was not entitled to procedural due process protection."  *Id.*

Based on *Sandin* and *Griffin,* the Plaintiff's Complaint fails to state a due process claim, since we find that the placement in "the Hole" and its subsequent cell restrictions do not impose atypical and significant hardships on the Plaintiff in relation to the ordinary incidents of prison life.  Thus, we shall recommend that Plaintiff's Fifth Amendment due process claim against Defendants Lindsay,

20

Karam, Lara and Dodrill be dismissed.  *See also Pabaon Osvaldo v. U.S.P. Lewisburg Warden*, 2006 WL 485574, *6 (M.D. Pa.)(Notwithstanding *Wilkinson v. Austin*, 545 U.S. 209, 224, 125 S. Ct. 2384, 2395 (2005), this Court found no liberty interest arose from placing  federal inmate in restrictive SMU program without a due process hearing even though additional restrictions were placed on inmate such as being on lockdown and one hour a day recreation time.  SMU conditions were found to be similar to those in other areas of the prison.).[16]  Further, the only Defendant alleged to have any personal involvement with the placement of Plaintiff in "the Hole" is Defendant Dodrill.[17]

It is well established that personal liability in a civil rights action cannot be imposed upon a state official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt v. Taylor*, 451 U.S. 527 (1981).  It is well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a civil rights case and that a complaint must allege such personal involvement.  *Id.*  Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences

---

[16] We also note that, Plaintiff attempts to create as many parallels to *Wilkinson* as possible.  Although Plaintiff alleges in his due process claim that "all human contact is prohibited[,]"(Doc. 1, p. 4), he avers in the same paragraph that he, as a "medium security inmate[,]" was "exposed to higher security inmates in the Hole while entering the cages handcuffed and they were not handcuffed." (*Id.*).  Plaintiff also concedes that he has visitation privileges, but that they occur through a "Plexi Glass Window." (*Id.*).  Clearly, this distinguishes Plaintiff's conditions from those in *Wilkinson*.

[17]Though Defendants Lindsay, Karam, and Lara are named in the Complaint, Plaintiff only alleges that "the administration" determined that he "would remain in the Hole pending a transfer." (Doc. 1, p. 3).  Plaintiff avers that Defendant Dodrill "directed [he] be erroneously placed in the 10 month program." (Doc. 1, p. 4).

upon which Plaintiff's claims are based.  *Id*.  As the Court stated in *Rode v. Dellarciprete*, 845 F.2d

1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement
> in the alleged wrongs . . . . [P]ersonal involvement can be shown
> through allegations of personal direction or of actual knowledge and
> acquiescence.  Allegations of participation or actual knowledge
> and acquiescence, however, must be made with appropriate
> particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons.  *Id*.  Courts have also

held that an allegation seeking to impose liability on a defendant based on supervisory status,

without more, will not subject the official to liability in a civil rights suit. *See Rode,* 845 F.2d at 1208.

Plaintiff only names Defendants Lindsay, Karam, Lara, and Dodrill due to their supervisory

status in USP Canaan.  Plaintiff does not state any time or place that the Defendants alleged

unconstitutional actions took place.  Plaintiff simply avers that Defendants "determined" and

"directed" at unknown times and unknown places to unknown employees.  Thus, Plaintiff has not

met the appropriate level of particularity with respect to the four supervisory Defendants as required

by *Rode*.  As discussed above, Plaintiff fails to state a Constitutional violation by these four

Defendants with respect to their alleged conduct.

Morever, Plaintiff has no Constitutional right to prison confinement under any particular

custody classification, *i.e.* general population as opposed to Special Housing status.  It is well-settled

that an inmate has no recognizable constitutional right to a particular custody status.  *See Wilson v.

Horn*, 971 F. Supp. 943, 947 (E.D. Pa. 1997).  Nor does Plaintiff have a right to be in any particular

prison, including placement in a halfway house. *See Olim v. Wakinekona*, 461 U.S. 238 (1983).  The

Court will not generally interfere with prison administration matters such as the prison's decision to

place an inmate in a particular security level or custody classification, especially if for the inmate's own safety. The Court should give significant deference to judgments of prison officials (*i.e.* Defendants Lindsay, Karam, Lara, and Dodrill) regarding prison regulations and prison administration. *See Fraise v. Terhune*, 283 F.3d 506 (3d Cir. 2002). Therefore, we will recommend that Plaintiff's claim challenging his placement in "the Hole" be dismissed and that Plaintiff be permitted to assert it in a habeas petition after he exhausts his BOP administrative remedies.[18]

For the reasons stated above, we shall recommend that Plaintiff's due process claims against Defendants Lindsay, Karam, Lara, and Dodrill be dismissed for failure to state a claim.

### 6. *Halfway House Claim*

Plaintiff also claims that his placement in "the Hole" violates the Fifth Amendment Due Process Clause because it disqualified him from placement in a six month early release program. (Doc. 1, p. 4). It appears that, although he does not name specific Defendants, Plaintiff raises this claim against Defendants Lindsay, Karam, Lara, and Dodrill for the same reasons discussed above with respect to claim number five (5).

---

[18] In *Heck v. Humphrey*, 512 U.S. at 486-487, the Court adopted the so-called favorable termination rule, which provides that if the success of a civil rights damages suit "would necessarily imply the invalidity of his conviction or sentence," then the Plaintiff-prisoner's claim is cognizable only if he can prove that his conviction or sentence was reversed, invalidated, or called into question by a grant of federal habeas corpus relief.

If *Heck*'s favorable termination rule applied in this case, Plaintiff would have to first establish that his finding of guilt which led to his placement in "the Hole" was found unlawful by a grant of federal habeas corpus relief. *See Nelson v. Campbell*, 541 U.S. 637, 647, 124 S.Ct. 2117, 2124 (2004). *But see Muhammad v. Close*, 540 U.S. 749, 124 S.Ct. 1303 (2004) (civil rights action not *Heck* barred where inmate did not seek to expunge misconduct charge since it could not be construed as seeking a judgment at odds with inmate's conviction or calculation of time to be served on underlying sentence).

As stated above, to analyze Plaintiff's due process claim, the first step is to decide whether he was deprived of a liberty or property interest protected by due process. *See Fuentes v. Shevin,* 407 U.S. 67 (1972). If not, it is not necessary to consider what process is due. *See Morrissey v. Brewer,* 408 U.S. 471 (1972). Thus, Plaintiff was entitled to due process only if he had a protected liberty interest in placement in a six month early release program ("Halfway House").

As the court in *Burton v. Brown, 2005* WL 2175455, *3 -4 (D.N.J., 2005) stated:

> Liberty interests protected by the Due Process Clause of the Fourteenth Amendment may arise under the Due Process itself or may be created by state statutes or regulations. *See Sandin v. Conner,* 515 U.S. 472, 483-484 (1995). But "the Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." *Id.* at 478. "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes,* 427 U.S. 236, 242 (1976); *see also Vitek v. Jones,* 445 U.S. 480, 493 (1980).

Furthermore, it is established that a convicted inmate, such as Plaintiff, has no liberty interest arising by force of the Due Process Clause itself in obtaining or retaining classification to a halfway house during the term of his sentence. *Id.  See also Meachum v. Fano,* 427 U.S. 215, 223-25 (1976) ("given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him [and] ... [t]he Constitution does not ... guarantee that the convicted prisoner will be placed in any particular prison."). As the Third Circuit said in *Asquith v. Department of Corrections,* 186 F.3d 407, 412 (3d Cir. 1999), "[e]ven if Asquith's life in prison was 'fundamentally different' from life at the halfway house, *Sandin* does not permit us to compare the prisoner's own life before and after the alleged deprivation. Rather, we must compare the prisoner's liberties after the alleged deprivation with the normal incidents of prison life."

As such, we do not find that Plaintiff's claim implicates a liberty interest under the Due Process Clause of the Fifth Amendment. *See also Callender v. Sioux City Residential Treatment Facility,* 88 F.3d 666, 669 (8th Cir.1996) (removing an inmate from a work release program and returning him to prison did not deprive the inmate of a liberty interest under *Sandin* because prison was "not atypical of what inmates have to endure in daily prison life"); *Dominique v. Weld,* 73 F.3d 1156, 1159-60 (1st Cir.1996) (same). Since an inmate is normally incarcerated in prison, subject to further segregation for behavior or protection while incarcerated, Plaintiff's placement in "the Hole" did not impose atypical and significant hardship on him in relation to the ordinary incidents of prison life; therefore, Defendants did not deprive him of a protected liberty interest. *See Asquith, supra.* Thus, as Plaintiff did not claim a deprivation of a liberty interest, and none is found in the Due Process Clause itself, we shall recommend that Plaintiff's stated due process claim against Defendants Lindsay, Karam, Lara, and Dodrill be dismissed for failure to state a claim. Further, we will recommend that Defendant Dodrill be dismissed entirely from this action since Plaintiff does not state any more claims against this Defendant.

### 7. Access to Courts Claim

Plaintiff alleges that between June 20, 2005 and August 20, 2005, he was denied "all access to any adequate law library during litigation of an appeal of a parole violation determination." (Doc. 1, p. 4). Plaintiff claims that on July 17, 2005, his appeal was due in the "Pennsylvania Supreme Court" and that he was not able to file this appeal because he was denied access to the law library. (*Id.*). Plaintiff alleges that Defendant Erickson was responsible "to get the law library up and running" and that Defendant Lara "neglected to provide access to a law library by segregated

inmates (sic)." (*Id.*).

It is well settled that prisoners have a constitutional right of access to the courts. *Bounds v. Smith,* 430 U.S. 817, 821 (1977).  The Supreme Court has held that prison authorities must assist inmates in preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.  *Lewis v. Casey,* 518 U.S. 343 (1996), citing *Bounds v. Smith*, 430 U.S. 817, 828 (1977).  However, *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, so an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense.[19] *Lewis v. Casey,* 518 U.S. 343, 351 (1996).  For such claims, an inmate must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim. *Id*.  As Plaintiff has alleged an injury, *i.e.* inability to file his probation violation  appeal, we shall recommend that the case proceed only against Defendant Lara with respect to his First Amendment access to courts claim.

With respect to Defendant Erickson, however, we shall recommend that Plaintiff's First Amendment access to courts claim be dismissed for failure to state a claim.  Plaintiff only alleges that Defendant Erickson was responsible "to get the law library up and running."  (Doc. 1, p. 4).  Plaintiff does not allege that Defendant Erickson was deficient in performing her responsibilities.  Nor does Plaintiff allege any actions by Defendant Erickson that denied him requested texts.  Plaintiff does not aver that any conduct by Defendant Erickson caused injury to his stated appeal

---

[19]The Supreme Court opined that allowing a prisoner to do so "would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary." 518 U.S. at 351.

to the Pennsylvania Supreme Court.  Furthermore, even if Defendant Erickson was deficient in some way, the shortcomings of the law librarian are irrelevant. *See Miranda v. Donate, et al.*, Civil No. 07-0975, M.D. Pa., 7-19-07 Order, J. Munley; *Said v. Donate, et al.*, Civil No. 07-1028, M.D. Pa., 07-1028, 7-30-07 Order, J. Rambo.  Therefore, we will recommend that Plaintiff's First Amendment access to courts claim against Defendant Erickson be dismissed for failure to state a claim.  Further, we will recommend that Defendant Erickson be dismissed entirely from this action since Plaintiff does not state any more claims against this Defendant.

Plaintiff also alleges Defendant Lindsay denied him access to the courts.  However, with respect to Defendant Lindsay, we shall recommend that the case be dismissed for failure to state a claim.  Plaintiff alleges that "Warden Cameron Lindsay was deliberately indifferent to Plaintiff's request for proper access to federal and state law, also legal directories in order to look up addresses to mail legal document." (Doc. 1, p. 4).  As stated above, a civil rights complaint must state time, place, and responsible persons. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).  Furthermore, allegations seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to liability. *Id*. at 1208.   Plaintiff, again, seeks to impose liability on Defendant Lindsay on the basis of *respondeat superior*.  As stated above, liability cannot be imposed on the basis of *respondeat superior*.  *See, e.g., Rizzo, supra; Hampton, supra; Parratt, supra*.  Plaintiff does not allege any direct action on the part of Defendant Lindsay, to cause him any injury with respect to his state court appeal.  Thus, Plaintiff's First Amendment access to court claim against Defendant Lindsay should be dismissed.

### 8. Eight Amendment Conditions of Confinement Claim

### A. Exposure to the Elements

Plaintiff avers that between September 5, 2005 and October 24, 2005, he "was forced to get his one hour of recreation in the cold and rain without a jacket, coat or rain wear." (Doc. 1, p. 5). Plaintiff alleges that he complained "continually" to Defendants Palmer and Hess. (*Id*.). Plaintiff avers that his requests for "warm clothing and clothing to stay semi-dry" were ignored by Defendants Palmer and Hess. Plaintiff also alleges that Defendant Palmer made jokes at his expense and "tortured" him by purposely leaving Plaintiff outside for more than his one hour of exercise. (*Id*.). Further, Plaintiff avers that he complained to Defendants Lindsay, Karam, and Lara in early September, but that his complaints were ignored. (*Id*.). Plaintiff also alleges that Defendant Gubbiotti both ignored his complaints and "tried to cover it up." (*Id*.). Plaintiff complains that he suffered "decongestion (sic), sore throat and emotional and psychological torment."[20] (*Id*.).

While "[t]he Constitution 'does not mandate comfortable prisons,' ... neither does it permit inhumane ones...." *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970 (1994)(quoting *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, (1981)). "[I]t is now settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.' " *Farmer,* 511 U.S. at 832, 114 S.Ct. 1970 (1994)(quoting *Helling v. McKinney,* 509 U.S. 25, 31, 113 S.Ct. 2475 (1993)). Under *Farmer,* conditions of confinement will violate the Eighth Amendment if the following two-prong test is met: (1) the deprivation is

---

[20]We note that "decongestion" is not an adverse medical condition. We construe this to mean Plaintiff suffered from congestion - a symptom of the common cold.

sufficiently serious; and (2) deliberate indifference by the prison official Defendants.  *Id*. at 834.

Stated simply, an Eighth Amendment violation exists when the prisoner is denied "the minimal

civilized measure of life's necessities" and the prison official acted with recklessness.  *Farmer,* 511

U.S. at 834-35 (quoting *Rhodes,* 452 U.S. at 347, 101 S.Ct. 2392); *Wilson v. Seiter,* 501 U.S. 294,

303, 111 S.Ct. 2321 (1991). In order to find an Eighth Amendment violation regarding conditions

of confinement, the evidence must show that the prison official was "both aware of facts from which

the inference could be drawn that a substantial risk of serious harm exists, and he must also draw

the inference." *Farmer,* 511 U.S. at 837.  Plaintiff makes no such claim as to any Defendant.

As stated, Plaintiff alleges that Defendants Palmer and Hess violated the Eighth Amendment

by not providing him with a "jacket, coat or rain wear" while he completed his daily, hour-long

exercise, from September 2005 through October 2005. (Doc. 1, p. 5).  Plaintiff also complains that

Defendants Lindsay, Karam, Lara, and Gubbiotti violated the Eighth Amendment by ignoring his

complaints about lack of a coat.

Based on these allegations, we find that no inference could be drawn by Defendants that

a substantial risk of serious harm existed to Plaintiff.[21]  Further, no requisite inhumane conditions

are alleged.  Failure to provide Plaintiff a coat during the early Fall in Northeast Pennsylvania

between September and October, for one hour per day, clearly does not amount to inhumane

conditions.  Moreover, as Plaintiff was clothed and not forced to take his hour of recreation if he

found conditions to be too severe, we find that "the minimal civilized measure of life's necessities"

---

[21]As noted above, Plaintiff's only alleged physical ailments were "decongestion (sic)" and
a sore throat. (Doc. 1, p. 5).

were provided and that the prison officials did not act with recklessness. *Farmer,* 511 U.S. at 834-35 (quoting *Rhodes,* 452 U.S. at 347, 101 S.Ct. 2392); *Wilson v. Seiter,* 501 U.S. 294, 303, 111 S.Ct. 2321 (1991). Thus, we shall recommend that Plaintiff's Eighth Amendment conditions of confinement claims against Defendants Palmer, Hess, Lindsay, Karam, Lara, and Gubbiotti be dismissed. *See Pabaon Osvaldo v. U.S.P. Lewisburg Warden*, 2006 WL 485574, *8 (M.D. Pa.)(no Eighth Amendment violation where federal inmate alleged he was in lockdown status in the SMU, he was only released from his cell one hour per day for recreation and he had limited access to the commissary). Further, we will recommend that Defendant Hess be dismissed entirely from this action since Plaintiff does not state any more claims against this Defendant.

Furthermore, Plaintiff's stated claims should be dismissed against Defendants Lindsay, Karam, Lara, and Gubbiotti specifically, because the law is well-settled that there is no constitutional right to a grievance procedure. *See Jones v. North Carolina Prisoners' Labor Union, Inc.* 433 U.S. 119, 137-138 (1977). This very Court has also recognized that grievance procedures are not constitutionally mandated. *See Chimenti v. Kimber*, Civil No. 3:CV-01-0273, slip op. at p. 18 n. 8 (March 15, 2002) (Vanaskie, C.J.), reversed in part, C.A. No. 03-2056 (3d Cir. June 8, 2005)(Non-Precedential). Even if the prison provides for a grievance procedure, violations of those procedures do not amount to a civil rights cause of action. *Mann v. Adams*, 855 F. 2d 639, 640 (9th Cir 1988); *cert denied*, 488 U.S. 898 (1988); *Hoover v. Watson*, 886 F. Supp. 410, 418 (D. Del. 1995), aff'd 74 F. 3d 1226 (3d Cir. 1995). *See also Burnside v. Moser*, Civil No. 04-2485, 12-16-04 Order, p. 3, J. Muir, M.D. Pa. (Even "[i]f the state elects to provide a grievance mechanism, violations of its procedures do not ... give rise to a [constitutional] claim.") (citations omitted). Thus, even if the

prison officials allegedly failed to respond to the prisoner's grievances, no constitutional claim is stated. *Burnside, supra*.

Therefore, we shall recommend that Defendants Lindsay, Karam, Lara and Gubbiotti be dismissed with respect to Plaintiff's Eighth Amendment conditions of confinement claim. Further, we recommend that Defendants Gubbiotti and Karam be completely dismissed from the case as there are no remaining claims against them.

Moreover, with respect to Plaintiff's complaint that Defendant Palmer "made jokes about [him] freezing in the rain[,]" we shall recommend that the claim be dismissed. (Doc. 1, p. 5). As the Court stated in *Wright v. O'Hara*, 2004 WL 1793018 (E.D. Pa.) * 7, "[w]here Plaintiff has not been physically assaulted, Defendant's words and gestures alone are not of constitutional merit." (Citation omitted). The *Wright* Court also stated:

> "Mean harassment . . . is insufficient to state a constitutional deprivation." *Murray v. Woodburn*, 809 F.Supp. 383, 384 (E.D. Pa. 1993). Verbal abuse or threats alone do not state a constitutional claim. *See Maclean v. Secor*, 876 F.Supp. 695, 698 (E.D. Pa. 1995). "This is so because '[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment. *Ramos v. Vaughn*, No. 94-2596, 1995 U.S.Dist. LEXIS 2164 at *12 (E.D.Pa. June 27, 1995), *quoting Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987).

*Id.* * 6.

In the *Wright* case, Plaintiff alleged that the CO  verbally threatened and harassed him and lunged towards him with a fist, without any physical contact. The *Wright* Court concluded that this conduct, "while inappropriate, does not give rise to an Eighth Amendment violation as it is not 'sufficiently serious'." *Id.* *7 (citation omitted).  Similarly, our Plaintiff alleges verbal harassment, in the form of jokes, without  physical contact.  If true, this conduct would certainly be

31

inappropriate, but it does not state an Eighth Amendment claim.

Thus, Plaintiff has not raised a constitutional violation with respect to Defendant Palmer's "jokes." Therefore, we find an Eighth Amendment claim has not been asserted with respect to Defendant Palmer's alleged verbal comments towards Plaintiff.

### B. Insufficient Clothing

Plaintiff also avers that between November 21 and January 8, 2006, he "was exposed to below freezing tempertures (sic) without thermal underwear, or insulated footwear, scarves or gloves and was forced to take recreation in the Hole in paper thin canvas slip ons." (Doc. 1, p. 5). Plaintiff alleges that Defendant Palmer searched his cell and "took all of his extra t-shirts and socks he tried to use to keep warm in the cold out of spite." (Id.). Plaintiff complains that Defendant Palmer would also deny his requests to return to his cell and leave him in the cold recreation area of "the Hole." (Id.). Plaintiff avers that Defendants Lindsay, Lara, Palmer, and Fashanna all "ignored and were indifferent" to his complaints and said "just don't go to recreation and stay in your cell." (Id.). Plaintiff avers that these conditions of confinement violated the Eighth Amendment of the Constitution.

As discussed above, while "[t]he Constitution 'does not mandate comfortable prisons,' ... neither does it permit inhumane ones...." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970 (1994)(quoting *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, (1981)). Under *Farmer*, conditions of confinement will violate the Eighth Amendment if the following two-prong test is met: (1) the deprivation is sufficiently serious; and (2) deliberate indifference by the prison official Defendants. *Id*. at 834. Stated simply, an Eighth Amendment violation exists when the prisoner

32

is denied "the minimal civilized measure of life's necessities" and the prison official acted with recklessness.   *Farmer,* 511 U.S. at 834-35 (quoting *Rhodes,* 452 U.S. at 347, 101 S.Ct. 2392); *Wilson v. Seiter,* 501 U.S. 294, 303, 111 S.Ct. 2321 (1991).

Plaintiff does not allege that the stated Defendants removed his thermal underwear, insulated footwear, scarves or gloves.   Nor does Plaintiff aver that Defendants forced him to leave his cell for recreation when he felt it was too cold.[22]   Based on these allegations, we find that no inference could be drawn by Defendants that a substantial risk of serious harm existed to Plaintiff. Further, no requisite inhumane conditions are alleged.   Moreover, as Plaintiff was clothed and not forced to take his hour of recreation if he found conditions to be too severe, we find that "the minimal civilized measure of life's necessities" were provided and that the prison officials did not act with recklessness.   *Farmer,* 511 U.S. at 834-35 (quoting *Rhodes,* 452 U.S. at 347, 101 S.Ct. 2392); *Wilson v. Seiter,* 501 U.S. 294, 303, 111 S.Ct. 2321 (1991). Thus, we shall recommend that Plaintiff's Eighth Amendment conditions of confinement claims against Defendants Lindsay, Lara, Palmer, and Fashanna be dismissed.

Moreover, as discussed above, the law is well-settled that there is no constitutional right to a grievance procedure.   *Jones, supra.*   Therefore, we shall recommend that Defendants Lindsay, Lara, Palmer, and Fashanna be dismissed with respect to Plaintiff's stated Eighth Amendment claim. Further, we recommend that Defendants Lindsay and Fashanna be completely dismissed from the case as there are no remaining claims against them.

---

[22]In fact, Plaintiff quotes all Defendants as saying "just don't go to recreation and stay in your cell." (Doc. 1, p. 5).

Finally, with respect to Plaintiff's claim that Defendant Palmer removed his "extra" t-shirts and socks, we do not find that Plaintiff has stated a constitutional violation under the Eighth Amendment since Plaintiff was not deprived of the shirt and socks he was wearing, and he was allowed to forego recreation time any day he felt it was too cold.  Thus, we will recommend that Defendant Palmer be dismissed entirely from this action since Plaintiff does not state any more claims against this Defendant.

### 9. Eighth Amendment Failure to Protect Claim

Plaintiff complains that on June 20, 2005, he left his cell block and was assaulted by fellow inmate Ramsey with a metal lock "as officers looked on."[23] (Doc. 1, p. 5).  Plaintiff alleges that Defendant Wagner abandoned his post at Plaintiff's living unit's metal detector.  Plaintiff avers that Defendant Wagner was negligent for leaving his post and allowing inmate Ramesy to wait at least ten minutes for Plaintiff. (Id.).  Plaintiff also alleges that Defendant Bossick, while waiting for backup, watched Plaintiff be assaulted and was negligent by not ordering Ramesy to leave prior to the attack. (Id.).  Further, Plaintiff complains that Defendant Kizziah was warned of the attack by an informant, but did nothing to stop it. (Id.).  Plaintiff also alleges that the "United States of America - Bureau of Prisons" failure to "produce any policy which would regulate the transportation or use

---

[23]Plaintiff claims he "observed Inmate Ramsey standing by the corridor door who began walking down the walkway and he ambushed [Plaintiff] with a strike to the back of the head." (Doc. 1, p. 5).  It is unclear how Plaintiff was ambushed and struck in the back of the head by an inmate he observed and walked towards him, but for present purposes we will accept this as a surprise assault.

of metal locks be inmates ... led to and caused the assault of [P]laintiff."[24] (*Id.*).

With respect to Plaintiff's claims against Defendants Kizziah, Bossick, and Wagner, who allegedly failed to intervene, the Plaintiff has sufficiently alleged the deliberate indifference of these three Defendants.  The Court in *Moon v. Dragovich*, 1997 WL 180333 *4 (E.D. Pa.), stated the standard as follows:

> The Supreme Court has differentiated between excessive force cases and cases in which prison officials fail to prevent harm in determining the proof required to meet the two prongs of an Eighth amendment violation. *Compare Farmer,* 114 S.Ct. at 1977 ("For a claim ... based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."); *id.* at 1979 (prison official must be deliberately indifferent to substantial risk of harm). ...   Whether the court judges Thomas' conduct under the failure to prevent harm rubric or the excessive force rubric, [FN3] Moon must show that he has suffered more than *de minimis* harm: Not ... every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort " 'repugnant to the conscience of mankind.' "

*Hudson,* 503 U.S. at 9; *see also Farmer,* 114 S.Ct. at 1977 (requiring risk of *serious* harm).

FN3. Most cases that have considered the application of the Eighth Amendment to a prison guard's failure to intervene to protect an inmate from injury inflicted by other prison guards have concluded that such conduct must be judged under *Farmer*'s deliberate indifference standard. *See Burgess v. Moore,* 39 F.3d 216, 218 (8th Cir.1994) (deliberate indifference standard applies when guards fail to intervene in attacks by other guards); *Buckner v. Hollins,* 983 F.2d 119, 122-23 (8th Cir.1993) (same); *cf. Urrutia v. Harrisburg County Police Dept.,* 91 F.3d 451, 456 (3d Cir.1996) **(noting that deliberate indifference standard should apply to claims that prison officials failed to protect inmate from violent attack whether or not the attack comes from another inmate).**

(Emphasis added).

---

[24]The BOP is not a proper party Defendant in a *Bivens* suit. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 1000 (1994)(Citations omitted).

The Eighth Amendment requires that the official must know of and disregard an excessive risk to inmate health or safety. *Farmer,* 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* "The question...is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health.'" *Farmer*, 511 U.S. at 843.

Here, Plaintiff alleges that he suffered unspecified injury. While it is not clear if the injuries to Plaintiff caused by inmate Ramesy are sufficiently serious to constitute an Eighth Amendment violation or if Plaintiff only alleges a *de minimis* injury as a result of the attack, we shall recommend that Plaintiff's Eighth Amendment failure to protect claim proceed against Defendants Kizziah, Bissock, and Wagner. *See Moon, supra; Urrutia v. Harrisburg County Police Dept., supra.* Plaintiff does not allege that he needed any further medical attention or treatment on the day in question or thereafter.[25] (Doc. 1, p. 5). Nonetheless, as mentioned, we find that Plaintiff should be allowed to proceed on his Eighth Amendment failure to protect claim against Defendants Kizziah, Bissock, and Wagner even though he admits the officers present waited for backup to arrive and then intervened. (Doc. 1, p. 5). Thus, we find that Plaintiff has sufficiently alleged that Defendants Kizziah, Bissock, and Wagner were deliberately indifferent to Plaintiff's protective needs.

With respect to the Defendant Wagner's alleged negligence for abandoning his position at

---

[25]In fact, Plaintiff alleges in his Complaint that he was placed in "the Hole" on the same day as this fight. Plaintiff does not specify any injury, lasting or temporary, in his Complaint. Plaintiff does state, however, Defendants were "indifferent to his getting hurt bad." (Doc. 1, p. 5).

the metal detector, we shall recommend that Plaintiff's negligence claim be dismissed.  As discussed above, Plaintiff cannot raise a negligence claim in a *Bivens* action.  *See  Davidsen v. O'Lone,* 752 F.2d 817 (3d Cir. 1984); *Daniels v. Williams*, 474 U.S. 327 (1986).   Therefore, the Plaintiff's negligence claim against Defendant Wagner is subject to dismissal for failure to state a claim.[26]

### 10. Remedies

As relief for his remaining claims, namely his First Amendment access to courts claim and his Eighth Amendment failure to protect claim, Plaintiff requests $500,000  in damages from Defendants for denial of access to the court, $20,000 for deliberate indifference to inmate Ramesy's assault, $500,000 in compensatory damages, and $500,000 in punitive damages.  (Doc. 1, p. 6).  We find that Plaintiff's request for a specific amount of monetary damages should be stricken.  Since Plaintiff seeks unliquidated damages for his Eighth Amendment claim, as well as pain and suffering and mental anguish, he cannot claim a specific sum of relief.  Pursuant to Local Rule 8.1, M.D. Pa., Plaintiff's request for specific monetary damages should be stricken from his Complaint.  *See Stuckey v. Ross*, Civil No. 05-2354, M.D. Pa., 1-9-06 Order, J. McClure.

Plaintiff also seeks injunctive relief. (Doc. 1, p. 5).

## VII.  Recommendation.

Based on the foregoing, it is respectfully recommended that all Defendants and all claims be dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim, except for Plaintiff's First Amendment access to courts claim against Defendant Lara and his Eighth

---

[26]As discussed above, Plaintiff must raise his negligence claims against the United States in an FTCA action after he exhausts his administrative tort claim with the BOP.

Amendment failure to protect claim against Defendants Kizziah, Bossick, and Wagner.

It is also recommended that Plaintiff's action be remanded to the undersigned with respect to the two stated claims against the four stated Defendants.



<u>**s/Thomas M. Blewitt**</u>
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: August <u>3</u>, 2007**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BENJAMIN SMITH,                  :     CIVIL ACTION NO. **4:CV-07-1079**
                                 :
            Plaintiff            :     (Judge Jones)
                                 :
      v.                         :     (Magistrate Judge Blewitt)
                                 :
UNITED STATES OF AMERICA, et al.,:
                                 :
                                 :
            Defendants           :

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **August 3, 2007.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within ten (10)
days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections.  The briefing
requirements set forth in Local Rule 72.2 shall apply.  A judge shall
make a *de novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the

39

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                        s/ Thomas M. Blewitt
                                        THOMAS M. BLEWITT
                                        United States Magistrate Judge


Dated: August 3, 2007