IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BENJAMIN SMITH, | : | No. 4:07-CV-1079 |
| | : | |
| Plaintiff, | : | |
| | : | Judge John E. Jones III |
| v. | : | |
| | : | (Magistrate Judge Blewitt) |
| UNITED STATES | : | |
| OF AMERICA, et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

## February 26, 2009

This matter is before the Court on the Report and Recommendation ("R&R") of Magistrate Judge Thomas M. Blewitt (Rec. Doc. 55) which recommends that the Defendants' Motion for Summary Judgment (Rec. Doc. 32) be granted and that Plaintiff's cross-Motion for Summary Judgment (Rec. Doc. 42) be denied. No objections to the R&R have been filed.[1] For the reasons set forth below, the Court will adopt the R&R.

## I.    STANDARD OF REVIEW

---

[1] Plaintiff originally had until January 16, 2009 to file objections to the R&R. However, on January 20, 2009, Plaintiff filed a motion to extend that time frame. (Rec. Doc. 56). We granted this motion, extending the objection period until February 23, 2009, even though it was filed after the time frame in which he could file objections. To this date, Plaintiff has failed to lodge on our docket any objections to the R&R.

When, as here, no objections are made to a magistrate judge's report and recommendation, the district court is not statutorily required to review the report before accepting it. Thomas v. Arn, 474 U.S. 140, 149 (1985).  According to the Third Circuit, however, "the better practice is to afford some level of review to dispositive legal issues raised by the report." Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987).  "[T]he court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  Fed. R. Civ. P. 72(b), advisory committee notes; see also Henderson, 812 F.2d at 878-79 (stating "the failure of a party to object to a magistrate's legal conclusions may result in the loss of the right to de novo review in the district court"); Tice v. Wilson, 425 F. Supp. 2d 676, 680 (W.D. Pa. 2006); Cruz v. Chater, 990 F. Supp. 375-78 (M.D. Pa. 1998); Oldrati v. Apfel, 33 F. Supp. 2d 397, 399 (E.D. Pa. 1998).  The Court's examination of this case confirms the Magistrate Judge's determinations, and although no reason has been presented to revisit them, the Court will briefly review the salient aspects of the R&R.

## II.   BACKGROUND

Plaintiff Benjamin Smith, a former inmate at the Untied State Penitentiary at Canaa ("USP-Canaan") filed a *pro-se* Complaint involving Federal Torts Claims

Act and <u>Bivens</u>[2] claims.  After receiving Magistrate Judge Blewitt's R&R of

August 3, 2007, we dismissed for failure to state claim the FTCA claims and all but

four <u>Bivens</u> claims.  These claims were subsequently the subject of Defendants'

Motion for Summary Judgment and Plaintiff's cross-Motion for Summary

Judgment.  Through an R&R dated December 29, 2008, Magistrate Judge Blewitt

recommended that we grant the former and deny the latter.

As we have already mentioned, the Plaintiff has failed to file objections to

this R&R.  Because we agree with the sound reasoning that led the Magistrate

Judge to the conclusions in the R&R, we will adopt the R&R in its entirety.  With a

mind towards conserving judicial resources, we will not rehash the reasoning of the

Magistrate judge; rather, we will attach a copy of the R&R to this document, as this

accurately reflects our resolution of the case <u>sub judice</u>. An appropriate order shall

enter.

---

[2] <u>Bivens v. Six Unkown Named Agents of Fed. Bur. Of Narcotics</u>, 403 U.S. 388 (1971).

3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BENJAMIN SMITH, | : | CIVIL ACTION NO. **4:CV-07-1079** |
| | : | |
| Plaintiff | : | (Judge Jones) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| UNITED STATES OF AMERICA, et al., | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

**I. Background**.

Plaintiff, Benjamin Smith, formerly an inmate at the United States Penitentiary at Canaan

("USP-Canaan")[1], filed, *pro se,* a joint FTCA action and *Bivens*[2] action, pursuant to 28 U.S.C.

§ 1331, on June 15, 2007.[3]  Plaintiff has also filed a motion for leave to proceed *in forma*

---

[1]Plaintiff is currently incarcerated at the Federal Correctional Institution at Cumberland, Maryland. (Doc. 43 and Doc. 34, Ex. 2, ¶ 5.). However, all of Plaintiff's claims arose while he was confined at USP-Canaan.

[2]*Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics,* 403 U.S. 388, 91 S. Ct. 1999 (1971).
  Plaintiff correctly indicated that this is a *Bivens* action as he seeks monetary damages from federal officials for alleged violations of his Constitutional rights. Doc. 1, p. 1, ¶ 1.
  The Third Circuit in *Banks v. Roberts,* 2007 WL 3096585, * 1, n. 1 (3d Cir. 10-19-07) (Non-Precedential) noted that "A *'Bivens* action' is a commonly used phrase for describing a judicially created remedy allowing individuals to seek damages for unconstitutional conduct by federal officials.  This constitutional tort theory was set out in *Bivens . . .* "

[3]Plaintiff also alleged that on or about June 13, 2005, he purchased defective Snack Legend Duplex Cookies ("cookies") from the U.S.P. Canaan Commissary. (Doc. 1, p. 2). Plaintiff averred that the cookies were defective, containing "what appeared to glass," when they left the factory. (*Id.*)  Plaintiff did not state that the prison staff altered the factory wrapped cookies or opened them.  Plaintiff also complained that former Defendant Dale, "Commissary Supervisor/Manager (sic)," was negligent for continuing to order cookies for the Centric Store in the prison from Keefe Supply after Defendant Dale was made aware that honey buns he had

*pauperis.* (Doc. 2).

After preliminarily screening Plaintiff's Complaint, on August 3, 2007, the undersigned issued a Report and Recommendation wherein it was recommended that all Defendants and all claims be dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim, with the exception of Plaintiff's First Amendment access to courts claim against Defendant Lara and his Eighth Amendment failure to protect claims against Defendants Kizziah, Bossick and Wagner. (Doc. 8). Plaintiff filed Objections to our Report and Recommendation. (Doc. 13).

On December 3, 2007, the District Court entered an Order adopting in part and rejecting in part our Report and Recommendation. (Doc. 14). Specifically, as Defendants and Plaintiff recognize (Doc. 34, p. 2 & Doc. 54, p. 1), the District Court allowed the following *Bivens* claims of Plaintiff to proceed:

---

ordered were allegedly moldy. (Doc. 1, p. 2). Plaintiff sought $10 million in relief from Defendants Keefe Supply, Snack Legends, and Centric Store for allegedly defective cookies under a product liability theory. Thus, Plaintiff originally styled his action as being filed pursuant to 28 U.S.C. § 1331 and the FTCA, as well as § 402A of Restatement (Second) of Torts. (Doc. 1, p. 1).

> § 402A. Special Liability Of Seller Of Product For Physical Harm To User Or Consumer
> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
> (a) the seller is engaged in the business of selling such a product, and
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
> (2) The rule stated in Subsection (1) applies although
> (a) the seller has exercised all possible care in the preparation and sale of his product, and
> (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

2

1) The Eighth Amendment denial of proper medical care claims against Defendants Emergency Medical Technician ("EMT") Simonson[4] and clinical director Dr. Dalmasi regarding treatment for Plaintiff's alleged injuries from his ingestion of glass from Snack Legends cookies;

2) The Eighth Amendment failure to protect claims against Defendants Captain Kizziah, Senior Officer Specialist Wagner and Senior Officer Bossick;

3) The First Amendment denial of access to the courts claim against Associate Warden Lara; and

4) The conspiracy claim against Defendants Kizziah, Lara and Lt. Clookey. (Doc. 14, pp. 17-18).[5]

On August 8, 2008, the remaining seven (7) Defendants jointly filed a Motion to Dismiss and for Summary Judgment. **(Doc. 32).** Defendants filed their support Brief with exhibits on August 20, 2008. (Doc. 34 and Exhibits).[6] Defendants also filed their SMF, pursuant to Local Rule 56.1, M.D. Pa., on August 20, 2008. (Doc. 36). On October 27, 2008, Plaintiff filed his opposition Brief to Defendants' stated Motion, with an incorporated cross-Summary Judgment Motion. (Doc. 43). Plaintiff also filed a Statement of Disputed Factual Issues and his Declaration with attached exhibits, Atts. A-V, on October 27, 2008. (Docs. 44 and 45). Defendants filed their Reply Brief in support of their stated Motion on November 6, 2008 (Doc. 48), and their Brief in

---

[4]We use the correct spelling of Defendant EMT Simonson's name herein.

[5]Since Plaintiff filed a separate action with respect to his FTCA claim against the United States, we do not address this claim herein. *See* Civil No. 08-1575, M.D. Pa.

[6]We refer to Defendants' Exhibits attached to their Doc. 34 Brief as "Doc. 34, Ex." followed by the exhibit number (*i.e.* 1-5) herein.

3

opposition to Plaintiff's cross-Summary Judgment Motion and their Response to Plaintiff's Statement of Disputed Factual Issues (Docs. 51 and 52) on November 24, 2008. Thus, Defendants' dispositive Motion has been briefed and is ripe for disposition. On December 15, 2008, Plaintiff filed his Reply Brief in support of his cross-Summary Judgment Motion with an attached copy of the BOP Program Statement regarding its Administrative Remedy Program. (Doc. 54). Thus, Plaintiff's October 27, 2008 cross-Summary Judgment Motion (Doc. 43) became ripe as of December 15, 2008.[7]

## II. Relevant Allegations of Complaint against the Seven Remaining Defendants.

1. *Eighth Amendment Denial of Medical Care Claims against Defendants Simonson and Dalmasi*

Plaintiff avers that after ingesting "glass" in the Snack Legends cookies he "went to medical for treatment" on "or about June 13, 2005." (Doc. 1, p. 2). Plaintiff avers that eight days after his treatment, approximately June 21, 2005, he began to bleed from his rectum. (*Id.*). Plaintiff claims that "[a]fter requesting treatment from Mr. Symonsen [EMT Simonson] at institutional triage and without examination Plaintiff's abdominal and anal pain and bleeding were dismissed." (*Id.*). Plaintiff further alleges that "[f]ourteen days later after deliberately ignoring [his] complaints of pain and bleeding [he] was examined after the bleeding had subsided on July 10, 2005." (*Id.*). Plaintiff claims that Dr. Dalmasi [Clinical Director], who performed his second examination, was

---

[7]On October 28, 2008, Plaintiff filed a Motion to Strike the Declaration of Kim Bucklaw, R.N., along with the attached prison medical records of Plaintiff, pursuant to Fed. R. Civ. P. 56(e), which was filed as an exhibit in support of Defendants' dispositive Motion. (Doc. 32, Ex. 1). On December 10, 2008, this Court issued an Order denying Plaintiff's Motion to Strike. (Doc. 53).

4

deliberately indifferent by "ordering a delay of two weeks for treatment and examination" despite Plaintiff being examined previously for abdominal discomfort. (Id.). Plaintiff complains that "Mr. Symonsen was only an E.M.T. and was not professionally qualified to assess medical conditions." (Id.). Plaintiff alleges that the United States was negligent for hiring Mr. Symonsen because he was "only an E.M.T."[8] Plaintiff claims that Defendant Dr. Dalmasi violated the Eighth Amendment by being deliberately indifferent to his medical treatment request for rectal bleeding, despite his previous treatment for abdominal discomfort. (Doc. 1, p. 2).

Thus, Plaintiff essentially alleges that Defendants Simonson and Dalmasi denied him proper medical care after he ate the allegedly defective cookies.

### 2. The Eighth Amendment Failure to Protect Claims against Defendants Captain Kizziah, Senior Officer Specialist Wagner and Senior Officer Bossick

Plaintiff alleges that on June 20, 2005, he left his cell block and was assaulted by fellow inmate Ramsey with a metal lock "as officers looked on."[9] (Doc. 1, p. 5). Plaintiff alleges that Defendant Wagner abandoned his post at Plaintiff's living unit's metal detector. Plaintiff avers that Defendant Wagner was negligent for leaving his post and allowing inmate Ramsey to wait at least ten minutes for Plaintiff. (Id.). Plaintiff also alleges that Defendant Bossick, while waiting for backup, watched Plaintiff be assaulted and was negligent by not ordering Ramsey to leave prior

---

[8] We note that Plaintiff's rectal bleeding allegedly began eight (8) days after Plaintiff was initially examined at the medical department. (Doc. 1, p. 2). We also note that Plaintiff's negligence claims against the United States were the subject of his 08-1575 action.

[9] Plaintiff claims he "observed Inmate Ramsey standing by the corridor door who began walking down the walkway and he ambushed [Plaintiff] with a strike to the back of the head." (Doc. 1, p. 5). As we noted previously, it is unclear how Plaintiff was ambushed and struck in the back of the head by an inmate he observed and walked towards him.

to the attack. (*Id.*). Further, Plaintiff complains that Defendant Kizziah was warned of the attack by an informant, but did nothing to stop it. (*Id.*). Plaintiff also alleged that the failure of the "United States of America - Bureau of Prisons" to "produce any policy which would regulate the transportation or use of metal locks by inmates ... led to and caused the assault of [P]laintiff." (*Id.*).

With respect to Plaintiff's claims against Defendants Kizziah, Bossick, and Wagner, who allegedly failed to intervene, Plaintiff was previously found to have sufficiently alleged the deliberate indifference of these three Defendants.

3.    *First Amendment Access to Courts Claim*

Plaintiff alleges that between June 20, 2005 and August 20, 2005, he was denied "all access to any adequate law library during litigation of an appeal of a parole violation determination." (Doc. 1, p. 4). Plaintiff claims that on July 17, 2005, his appeal was due in the Pennsylvania Supreme Court and that he was not able to file this appeal because he was denied access to the law library. (*Id.*). Plaintiff alleges that former Defendant Erickson was responsible "to get the law library up and running" and that Defendant Lara "neglected to provide access to a law library by segregated inmates (sic)." (*Id.*).[10]

4.    *Conspiracy Claim against Defendants Kizziah, Lara and Clookey*

Plaintiff contends that Defendants Kizziah and Lara conspired to order Defendant Clookey to fabricate a reason for placing him in the Special Housing Unit ("SHU"), "the Hole." (Doc. 1, p. 4). We construed Plaintiff as alleging a conspiracy to deprive him of his Fourth Amendment right to due process of law, prior to his placement in the SHU, as against Defendants Kizziah,

---

[10]   The BOP was dismissed as a party Defendant.

Lara, and Clookey.[11]

Plaintiff simply alleges that Defendants Kizziah and Lara conspired to order Defendant Clookey to "fabricate a reason for seg (sic)." (Doc. 1, p. 4). This conspiracy allegation is briefly stated and is not supported by any facts or further allegations of how the conspiracy was formed.[12] Plaintiff avers that Defendants Kizziah and Lara ordered Defendant Clookey to manufacture a basis for his SHU confinement. Plaintiff does not allege that Defendant Clookey actually fabricated a reason for placing him in "the Hole."

Thus, Plaintiff claims that Defendants Kizziah, Lara, and Clookey were part of a conspiracy to deprive him of his constitutional rights to due process prior to his placement in the SHU.

### III. Motion for Summary Judgment Standard.

A motion for summary judgment may not be granted unless the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). An issue of fact is "`genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

---

[11]As previously discussed, Plaintiff alleged that his placement in "the Hole" violated his right to due process. (Doc. 1, p. 3). The District Court dismissed Plaintiff's due process claim. (Doc. 14, p. 18).

[12]Plaintiff's allegations regarding his general conspiracy claim are only contained in one sentence, which is seventeen words long. (Doc. 1, p. 4).

The burden of proving that there is no genuine issue of material fact is initially upon the movant. *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.* 725 F.2d 667 (3d Cir. 1983). Upon such a showing, the burden shifts to the nonmoving party. *Id.* The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988). In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id.*, quoting *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied*, 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976).

Moreover, the Third Circuit has recently indicated that "although the party opposing summary judgment is entitled to 'the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact,' and 'cannot rest solely on assertions made in the pleadings, legal memorandum or oral argument.'" *Goode v. Nash*, 2007 WL 2068365 (3d Cir. 2007)(Non-Precedential)(citation omitted).

## IV. *Bivens*.

Under *Bivens*, the District Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 to entertain an action brought to redress alleged federal constitutional or statutory violations by a federal actor under *Bivens, supra.* Pursuant to *Bivens*, "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978). A *Bivens*-style civil rights claim is the federal equivalent of an action brought pursuant to 42 U.S.C. § 1983 and the same legal principles have been held to apply. *See, Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir. 1975); *Veteto v. Miller*, 829 F.Supp. 1486, 1492 (M.D. Pa. 1992); *Young v. Keohane*, 809 F.Supp. 1185, 1200 n. 16 (M.D. Pa. 1992). In order to state an actionable *Bivens* claim, a plaintiff must allege that a person has deprived him of a federal right, and that the person who caused the deprivation acted under color of federal law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Young v. Keohane*, 809 F.Supp. 1185, 1199 (M.D. Pa. 1992).

## V. Discussion.

1.  *Plaintiff's Bivens claims for money damages as against Defendants*

Defendants argue that Plaintiff's *Bivens* claims for money damages as against them in their official capacities should be dismissed. (Doc. 34, pp. 7-8 and Doc. 42, p. 2). Plaintiff states that all of the remaining seven Defendants are being sued for money damages in their individual capacities and that medical Defendants, Dr. Dalmasi and EMT Simonson, are the only Defendants who are also being sued in their official capacities only to the extent that he seeks injunctive relief.

(Doc. 43, p. 2).

As the Court noted in *Abuhoran v. Morrison*, 2005 WL 2140537, *1, n. 3 (E.D. Pa. 2005), since federal inmates did not indicate if they sued Defendants in their individual or official capacities, since inmates sought injunctive relief with respect to the BOP's policies, and since inmates sought  money damages against the individual federal officials, the Court assumed that inmates intended to sue Defendants in both their official and individual capacities, *i.e.* they sued Defendants in their official capacities with respect to the injunctive relief sought and sued Defendants in their individual capacities with respect to the money damages sought.  The *Abuhoran* Court cited to *Miller v. Smith*, 220 F. 3d 491, 494 (7th Cir. 2000), which held that "[w]here the Plaintiff seeks injunctive relief from official polices or customs, the Defendant has been used in her official capacity ... ."

Our Plaintiff states that, to the extent that he sues Defendants Simonson and Dalmasi in their official capacities, he only seeks injunctive relief against t hem in his Complaint "requiring documentation of all medical complaints and diagnoses from sickline in the [SHU] by qualified personnel." (Doc. 43, p. 2).  We find that since Plaintiff has sued Defendants Simonson and Dalmasi in their official capacities only with respect to his request for injunctive relief, Plaintiff can proceed with his injunction request against them.  Thus, because Plaintiff sought only injunctive relief against the two stated Defendants, he can sue them in their official capacities.  We agree with Plaintiff that he could not seek injunctive relief from these Defendants in their individual capacities. (Doc. 43, p. 2).  While Defendants are correct in that Plaintiff cannot sue any of them in their official capacities for monetary damages, Plaintiff can seek injunctive relief against

Defendants Simonson and Dalmasi in their official capacities.[13]

Thus, we find that Plaintiff's intention was to only seek injunctive relief from Defendants Simonson and Dalmasi in their official capacities, and not monetary damages. In any event, both parties agree that Plaintiff cannot seek monetary damages against any of the federal Defendants in their official capacities.

2.    *Conspiracy Claim and Eighth Amendment Failure to Protect Claims*

Defendants argue that Plaintiff failed to exhaust his BOP administrative remedies with respect to his conspiracy claim and his failure to protect claims. (Doc. 34, p. 4). Defendants point to ¶'s 28.-37. of their SMF (Doc. 36) for support.[14]

---

[13]Plaintiff cannot seek monetary damages against the federal Defendants in their official capacities. As the Court in *Breyer v. Meissner*, 23 F. Supp. 2d 540, 544 (E.D. Pa. 1998), stated:
To the extent that the proposed claims seek monetary damages against the United States or individual defendants in their official capacities, the claims are barred by the doctrine of sovereign immunity. *Federal Deposit Insurance Corp. v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994). Plaintiff does not allege that the United States has waived its immunity in this case. Furthermore, the Supreme Court has held that a *Bivens* action may not be brought against a federal agency. *Id.* 510 U.S. at 484-86, 114 S.Ct. at 1005-06.

[14]Defendants concede that Plaintiff exhausted his Administrative remedies with respect to his First Amendment denial of access to courts claim and his Eighth Amendment denial of proper medical care claims regarding his alleged rectal bleeding after he ate the cookie with glass in it. (Doc. 34, p. 4 and Doc. 48, p. 3). Thus, insofar as Plaintiff contends in his Reply Brief (Doc. 54, pp. 2-4) that his procedural default due to his failure to name Defendant Lara in his grievance regarding his First Amendment denial of access to courts claim should be excused, we do not address this argument since Defendants did not raise failure to exhaust as a defense to this claim which only remains as against Defendant Lara. Also, insofar as Plaintiff contends in his Reply Brief (Doc. 54, pp. 4-5) that he properly stated the personal involvement of Defendant

Paragraphs 28.-37. of Defendants' SMF (Doc. 36, pp. 7-8) state as follows:

    28.    On November 9, 2005, Smith filed administrative remedy 394701-F1 in which he complained of a breach of security by a correctional officer the day Smith was assaulted. *See* Albert Decl. [Doc. 34] (Ex. 3) ¶ 11; Administrative Remedy Generalized Retrieval (Attach. 2 to Ex 3) at 16.

    29.    This remedy was rejected on November 10, 2005, because Smith did not provide specific information. *See id.*

    30.    Smith was informed that he could re-file his appeal within ten days of the notice. *See id.*

    31.    Smith re-filed 394701-F2 on November 22, 2005. *See* Albert Decl. (Ex. 3) ¶ 11; Administrative Remedy Generalized Retrieval (Attach. 2 to Ex. 3) at 17.

    32.    This remedy was rejected on November 23, 2005, as untimely. *See id.*

    33.    If Smith was attempting to exhaust on a failure to protect claim, he failed to exhaust on this issue. *See* Albert Decl. (Ex. 3) ¶ 11.

    34.    Smith failed to exhaust the issue of conspiracy. *See id.* ¶ 12.

    35.    On December 7, 2005, Smith filed administrative remedy 397308-R1 requesting release from the SHU. *See* Albert Decl. (Ex. 3) ¶ 13; Administrative Remedy Generalized Retrieval (Attach. 2 to Ex. 3) at 20.

    36.    On December 7, 2005, this remedy was rejected because

---

Lara with respect to his First Amendment denial of access to courts claim, we do not address this argument since we address below this claim on its merits. We note that we do agree with Plaintiff (Id., p. 5) that the District Court has already determined that he sufficiently stated the personal involvement of Defendant Lara with respect to his First Amendment denial of access to courts claim for purposes of screening under the PLRA.

    We consider the exhaustion issue first with respect to Plaintiff 's conspiracy claim and his failure to protect claims since exhaustion is a threshold issue. *See Lasko v. Hendershot*, 2007 WL 2828787 at * 5, n. 3 (M.D. Pa.).

it was submitted at the wrong level. *See id.*

37.     Smith failed to file any other remedies regarding this
[conspiracy to place him in the SHU] issue. *See* Albert Decl. (Ex. 3) ¶ 13.

Thus, BOP Paralegal Specialist Albert declares that "[Plaintiff] Smith has not exhausted on the issues of failure to protect and conspiracy. (Doc. 34, Ex. 3, ¶15.).

Plaintiff states that he exhausted both of his stated claims, *i.e.* his conspiracy claim and his failure to protect claims. (Doc. 43, pp. 4-5). Plaintiff points to his exhibits (Doc. 44, Atts. U, P, Q, R, S and K, L, M and N). In their Reply Brief, Defendants state that Plaintiff has conceded that he failed to exhaust his conspiracy claim and his failure to protect claims prior to filing this case. (Doc. 48, p. 4). We find that Plaintiff has only acknowledged that he did not exhaust his administrative remedies with respect to his failure to protect claims until July 6, 2007, which was after he filed this action (*i.e.* on June 15, 2007). Plaintiff's own evidence shows that he did not completely exhaust his failure to protect claims until July 6, 2007, when Plaintiff's administrative appeal regarding these claims was finally denied by the BOP Administrator of National Inmate Appeals (Watts). (Doc. 44, Att. S). In fact, in his Statement of Disputed Factual Issues, Plaintiff admits that his failure to protect claim was exhausted on "on July 6, 2007." (Doc. 45, p. 4, ¶ C. 2. d.).

It is well settled that an inmate must fully exhaust his administrative remedies of his claims prior to filing his suit in federal court. The claim cannot be filed in a court action until exhaustion is completed. Section 1997(a) of the Prison Litigation Reform Act ("PLRA") provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison or other correctional facility, until such

13

administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including § 1983 actions or actions brought pursuant to any other federal law. The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.*

The Third Circuit Court of Appeals, has held that the defendant has the burden of pleading and proving failure to exhaust administrative remedies as an affirmative defense in a § 1983 action. *Ray v. Kertes*, 285 F.3d 287, 295-96 (3d Cir. 2002). The Third Circuit has recently stated that the PLRA "requires that inmate-Plaintiffs exhaust all administrative remedies prior to filing suit in federal court." *Banks v. Roberts*, 2007 WL 3096585, * 1 (3d Cir. 10-19-07)(Non-Precedential) (citation omitted). The *Banks* Court also noted that a futility exception to the PLRA's mandatory exhaustion requirement is completely precluded. *Id.*

As the Court stated in *Ullrich v. Idaho*, 2006 WL 288384 , * 2 (D. Idaho), "[a] prisoner is required to exhaust all of his administrative remedies within the prison system before he can bring a civil rights lawsuit challenging the conditions fo his confinement." "Exhaustion must occur prior to filing suit, and a prisoner may not attempt exhaustion of his administrative remedies during the course of a civil rights action." (Citation omitted).

The undisputed evidence of both parties shows that Plaintiff did not fully exhaust his failure to protect claims before he filed the present action. (Doc. 44, Att. S and BOP Paralegal Specialist Albert's Declaration, Doc. 34, Ex. 3, ¶11.). Thus, the uncontested evidence shows that the Plaintiff did not fully and properly exhaust his failure to protect claims he asserts against Defendants Kizziah, Wagner and Bossick at the time he filed this case as required.

Therefore, we will recommend that Defendants' Summary Judgment Motion be granted with respect to Plaintiff's Eighth Amendment failure to protect claims as against Defendants Kizziah, Wagner and Bossick.[15]  Also, since there are no further remaining claims as against Defendants Wagner and Bossick, we will also recommend that judgment be entered in favor of these two Defendants and against Plaintiff. Further, insofar as Plaintiff's cross-Summary Judgment Motion seeks summary judgment with respect to his failure to protect claims, we will recommend that Plaintiff's Motion be denied.

Plaintiff states that he exhausted his conspiracy claim prior to filing his action, and he points to his evidence for support (i.e. Doc. 44, Atts. K-N). Defendants contend that Plaintiff did not exhaust the issue of conspiracy and point to Albert's Declaration in which she declares, as mentioned, that "[Plaintiff] Smith failed to exhaust the issue of conspiracy which he raises in his complaint." (Doc. 34, Ex. 3, ¶12. and ¶ 15.).

In his December 9, 2005 Request for Administrative Remedy (#398163-F2), Plaintiff requested that statements in his inmate threat assessment and case file be removed since they

---

[15]We consider Defendants' Motion as one for summary judgment since we have relied upon the evidence submitted by Plaintiff and Defendants.

were not true. (Doc. 44, Atts. K and L). Plaintiff's December 9, 2005 Request for Administrative Remedy was denied on December 30, 2005. (Id., Att. L). Plaintiff appealed to the BOP Central Office on April 19, 2006, and requested that the statements attributed to him be redacted from his prison file. (Id., Att. M). On June 13, 2006 the BOP Administrator of National Inmate Appeals (Watts) denied Plaintiff's appeal in which he contended that "false information was relied upon to support a request that [he] be transferred to another prison. [Plaintiff] reuqest[ed] removal of such information from [his] record and transfer to another prison." (Id., Att. N). In the final denial of Plaintiff's December 9,2 005 Request for Administrative Remedy (#398163-F2), Watts stated:

> Staff determined your continued presence at the previous prison was a threat to the safe, secure and orderly operation of the facility. This perceived threat was due to your quest for a position of leadership within an inmate group. Staff determinations regarding this matter are a reasonable exercise of sound correctional judgment which are believed to be in the best interests of the correctional environment. We concur with that assessment. There is no evidence the investigation into this matter contains false information.

(Id.).

To the extent that the Plaintiff claims in his Complaint that Defendants Kizziah, Lara, and Clookey were part of a conspiracy to deprive him of his constitutional rights, *i.e.* conspired to fabricate a basis to lock him in the SHU and have him transferred to another prison, we agree with Defendants (Doc. 34, p. 11 and p. 13) that the evidence shows that Plaintiff failed to exhaust his BOP administrative remedies with respect to this claim. Plaintiff's December 9, 2005 Request for Administrative Remedy (#398163-F2) simply did not state the conspiracy issue which he alleges in his present Complaint. While Defendants' evidence shows that Plaintiff exhausted his administrative remedies with respect to his placement in the SHU and his prolonged stay in the

SHU, it also shows that Plaintiff did not exhaust the conspiracy claim he raises in his instant Complaint. (Doc. 34, Ex. 3, ¶ 12.). Thus, we agree with the above mentioned statement of Albert in her Declaration regarding Plaintiff's failure to exhaust the conspiracy claim he raises in his Complaint. (Id.).

Even if Plaintiff did exhaust his conspiracy claim, we agree with Defendants that Plaintiff has failed to show that Kizziah, Lara, and Clookey entered into any agreement to violate his constitutional rights by improperly placing him in the SHU without due process when he was confined at USP-Canaan. (Doc. 34, pp. 18-19). Defendants' evidence shows that on June 20, 2005, Plaintiff was placed in the SHU on administrative detention status after an altercation with another inmate during his confinement at USP-Canaan. (Doc. 34, Ex. 2, ¶ 5.). Plaintiff was confined in the SHU for about six months until January 9, 2006, when he was transferred from USP-Canaan to FCI-Ray Brook. (Id., ¶ 15.). We concur with Defendants that there is "no evidence that Defendants violated any of [Plaintiff's] constitutional rights by housing him in the SHU for this valid correctional reason." (Doc. 34, p. 19). In fact, in his Statement of Disputed Factual Issues, Plaintiff admits that on June 20, 2005, he was placed in the SHU for "possible involvement in a fight." (Doc. 45, pp. 2-3, ¶ 4. and p. 1, ¶ 2.).[16]

---

[16]Insofar as Plaintiff claimed that his placement in the SHU violated his due process rights, the District Court previously dismissed this claim. (Doc. 14, p. 18). Plaintiff alleged that on June 20, 2005, he was placed in "the Special Housing Unit (The Hole)" for possible involvement in a fight. (Doc. 1, p. 3). Plaintiff stated that while he "had[,] in fact[,] been attacked[,]" he averred that Defendants Cameron Lindsay, Frank Karam, and Frank Lara, determined he would remain in the Special Housing Unit ("The Hole") pending a transfer. (Id.). Plaintiff complained that, after attempting to transfer him, he was not allowed a hearing to present evidence to challenge his placement in SHU. (Id.). Plaintiff also complained that his confinement was atypical as he was a "medium security prisoner who was segregated in the

Therefore, it will be recommended that Defendants' Summary Judgment Motion be granted with respect to Plaintiff's conspiracy claim against Defendants Kizziah, Lara, and Clookey. Further, we will recommend that judgment be entered in favor of Defendants Kizziah and Clookey since Plaintiff does not have any more claims remaining against these two Defendants.

3.    *First Amendment Denial of Access to Courts Claim against Defendant Lara*

As the Third Circuit Court stated in *Salkeld v. Tennis*, C.A. No. 07-1776, (3d Cir. 9-13-07), slip op. p. 3, 2007 WL 2682994, * 1 (3d Cir. 2007) (Non-precedential):

> An inmate alleging a violation of *Bounds v. Smith*, 430 U.S. 817 (1977), must show an actual injury, a requirement that derives from the doctrine of standing. *Lewis v. Casey*, 518 U.S. 343, 349 (1969). Specifically, the inmate must show that the alleged shortcomings in the prison policy "hindered his efforts to pursue a legal claim." *Id.*

---

Hole at a high security pennitentiary (sic)." (*Id.*). Moreover, Plaintiff alleged that placement in SHU excluded him from consideration for an early release program such as a "Half Way House." (Doc. 1, p. 4). Plaintiff averred that Defendant Scott Dodrill "directed that [he] be erroneously placed in the 10 month program." (*Id.*). We construed these allegations to constitute Plaintiff's Due Process Clause claims under the Fifth Amendment. As stated, the District Court dismissed Plaintiff's due process claims against Defendants Lindsay, Karam, Lara and Dodrill. (Doc. 14, p. 18).

Additionally, despite Plaintiff's statement in his Statement of Disputed Factual Issues and in his Declaration that on June 13, 2005, he was placed in the SHU by Defendant Lara for two days without cause as retaliation for complaining about the alleged glass in his cookie and to intimidate him not to file a complaint   (Doc. 45, p. 2, ¶ 3. and Doc. 44, ¶ 14.), as stated, the due process claim asserted against Defendant Lara was dismissed.  Further, Plaintiff does not present any evidence that Defendants Kizziah, Lara, and Clookey entered into any agreement to violate his constitutional rights by placing him in the SHU on June 20, 2005.  As stated, Plaintiff admits that he was placed in the SHU on June 20, 2005, due to a fight with another inmate. Moreover, there is no First Amendment retaliation claim pending in this case against Defendant Lara. (*See* Doc. 14, pp. 17-18). We also note that notwithstanding Plaintiff's averment that Defendant Lara tried to intimidate him into not filing a complaint, Plaintiff filed such an action with this Court, namely, the present case.

at 351. *See also Reynolds v. Wagner*, 128 F.3d 166, 183 (3d Cir. 1997)
(no First Amendment right to subsidized mail). However, the injury
requirement is not satisfied by just any type of frustrated legal claim;
the legal claim must relate to a direct or collateral challenge to a
prisoner's sentence of conditions of confinement. *Lewis*, 518 U.S.
at 349 ("Impairment of any *other* litigating capacity is simply one
of the incidental (and perfectly constitutional) consequences of
conviction and incarceration.") (emphasis in original).

In *O'Connell v. Sobina*, 2008 WL 144199, * 10 (W. D. Pa.), the Court stated:

> In *Christopher v. Harbury*, 536 U.S. 403, 122 S.Ct. 2179,
> 153 L.Ed.2d 413 (2002), the Supreme Court set forth
> specific criteria that a court must consider in determining
> whether a plaintiff has alleged a viable claim of right to
> access to the courts. Specifically, the Supreme Court held
> that, in order to state a claim for denial of access to courts,
> a party must identify all of the following in the complaint:
> 1) a non-frivolous, underlying claim; 2) the official acts
> frustrating the litigation; and 3) a remedy that may be awarded
> as recompense but that is not otherwise available in a future
> suit. *Christopher*, 536 U.S. at 415.

Plaintiff states that after he was placed in the SHU at USP-Canaan on June 20, 2005, due
to his involvement in a fight with another Inmate, he requested, on June 29, 2005, that
Defendant Lara give him access to the law library so that he could prepare an appeal brief for
filing with the Pennsylvania Supreme Court in Case No. 385 MT 2005 [*Smith v. PA Board of
Probation & Parole*] regarding an adverse parole decision. (Doc. 45, p. 3, ¶ 5.). Plaintiff also states
as follows:

> a.      At that time, Smith also requested a pen and paper because
> he was not allowed to purchase any for security reasons. Ibid.

> b.      Mr. Lara denied the request to use the law library and said he
> would have the officers pass out the supplies of pen and paper. Smith
> received a pen and paper for the first time on or about July 15, 2005.
> Ibid.

(*Id.*).

Plaintiff further states:

> 7.  On August 3, 2005, Mr. Knox, Unit Manager USP Canaan, provided a memo to Smith stating he had no access to any law library.
> Law memo (Att B).

> 8.  On July 29, 2005, Smith mailed an affidavit and an intent to appeal letter to the Commonwealth Court hoping they would give it to the Pennsylvania Supreme Court which notified them Smith had no access to a law library.  Affidavit letter (Att A) (Smith decl. Pg. 2, 1.7).

> 9.  On August 17, 2005, the intent to appeal letter and affidavit were rejected by the Supreme Court and the appeal case was closed.
> Clerk Letter (Att. C).

> 10.  On August 23, 2005, Smith filed a Petition to file Allowance of Appeal Nunc Pro Tunc in the Supreme Court with the memo provided by Mr. Knox.  Petition (Att D-F).

> 11.  On October 14, 2005 the Supreme Court denied the motion.
> Court Order (Att G).

(*Id.*, ¶'s 7.-11. and & Doc. 43, pp. 3-4).[17]

Plaintiff points to his evidence Doc. 44, Atts. B-G, to support his quoted statements.

In their Response to Plaintiff's Statement of Disputed Factual Issues, Defendants admit, due to the recent opening of the prison, that there was no law library in general population at USP-Canaan until one was set up electronically in the main library about May 28, 2005.  (Doc. 52, p. 2, ¶ B. 2.).  Plaintiff's evidence shows that in August 2005, the Unit Manager advised

---

[17]Since only Plaintiff's First Amendment denial of access to courts claim remains as against Defendant Lara, we do not address Plaintiff's other statements in his Statement of Disputed Factual Issues and in his Declaration concerning such claims against other Defendants which have been dismissed.

Plaintiff that the law library in the SHU was not yet in operation and that it was anticipated that it would be in operation by the end of September 2005. (Doc. 44, Att. B). Defendants deny the above stated ¶'s 5.-11. of Plaintiff's Statement of Disputed Factual Issues. (Doc. 52, p. 2, ¶ B. 5.-13.).

As Defendants state (Doc. 48, p. 4), in his opposition Brief (Doc. 43, pp. 3-4), Plaintiff admits that when he requested from Defendant Lara access to the computer law library to prepare an appeal brief to the Pennsylvania Supreme Court on June 29, 2005, "Lara denied Smith permission to use the law library in the SHU at that time. [Lara] told Smith he should request what he needed from the main law library." Based on Plaintiff's evidence, his appeal (Petition for Allowance of Appeal) to the Pennsylvania Supreme Court was due by July 17, 2005. (Doc. 44, Att. C). Thus, as Defendants contend, Plaintiff admits that three weeks prior to his Pennsylvania Supreme Court appeal deadline, Lara advised him to get what he needed for his appeal from the main law library. However, as Defendants state (Doc. 48, p. 4), there is no evidence that Plaintiff ever made a request for permission to use the main law library so that he could timely file his appeal with the Pennsylvania Supreme Court. Also, as Defendants state, "there is no evidence that [Plaintiff] Smith attempted to contact the [Pennsylvania Supreme Court] prior to expiration of the deadline to seek an extension. Instead, as [Plaintiff's] opposing brief explains, he waited until two weeks after the deadline to contact the court." (Id.).

Plaintiff's own evidence shows that his "Petitioner's Intent to Appeal" was not received by the Pennsylvania Supreme Court until August 17, 2005, and that it was mailed out on August 1, 2005. (Doc. 44, Att. C). Plaintiff's evidence, i.e. his August 23, 2005 Petition for Leave to file

a Petition for Allowance of appeal *Nunc Pro Tunc* he sent to the Pennsylvania Supreme Court, indicated that he did not know of his appeal time regarding the adverse parole decision and that he did not know in which state court he had to file his appeal. Also, on October 14, 2005, the Pennsylvania Supreme Court denied Plaintiff's stated Petition. However, these matters have nothing to do with Defendant Lara, and Plaintiff should have heeded his directive for Plaintiff to request what he needed from the main law library well in advance of Plaintiff's deadline. (Doc. 44, Atts. D-G).

Therefore, no actual harm to Plaintiff's state court appeal case regarding an adverse parole decision occurred as a result of Defendant Lara's alleged conduct in this case. In fact, we agree with Defendants (Doc. 48, pp. 4-5) that if Plaintiff followed Lara's June 29, 2005 directive to request what legal material he needed from the main law library, he could have filed his appeal timely with the Pennsylvania Supreme Court. Defendant Lara's conduct did not cause any injury to Plaintiff's appeal rights, and Plaintiff's First Amendment denial of access to court claim against Lara must fail. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002)(requiring allegations that the document inmate was unable to file was non-frivolous to state an access to courts claim); *Romansky v. Stickman*, 147 Fed. Appx. 310, 312 (3d Cir. 2005)(Non-Precedential)("*Christopher* [case] requires that 'the predicate claim be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope.")(citing *Christopher* at 416); *O'Connell*, 2008 WL 144199, * 10.

Thus, we will recommend that Defendants' Summary Judgment Motion be granted with respect to Plaintiff's First Amendment denial of access to court clam against Defendant Lara and that judgment be entered in favor of Defendant Lara since there are no further claims pending

against him. We will recommend that Plaintiff's cross-Summary Judgment Motion with respect to his First Amendment denial of access to courts claim against Defendant Lara be denied. (Doc. 43, p. 5).

4.    *Eighth Amendment Denial of Proper Medical Care Claims after Ingestion of Glass in Cookie against Defendants Dalmasi and Simonson*

Plaintiff details the relevant allegations concerning his Eighth Amendment denial of proper medical claims against Defendants Dalmasi and Simonson following his June 13, 2005 swallowing of glass while chewing a cookie in his Statement of Disputed Factual Issues, Doc. 45, pp. 1-2, ¶'s A.1.-3.). Plaintiff alleges that Defendant EMT Simonson did not properly assess and treat him on June 21, 2005, eight days after the glass swallowing incident, after Simonson conducted a short (15-20 seconds) sick call interview with him at his SHU cell door with respect to his complaints of rectal bleeding and severe stomach pain. Plaintiff alleges that Simonson misdiagnosed his complaints as hemorrhoids instead of being caused by the glass. Plaintiff also alleges that Simonson failed to document in his medical records his complaints about rectal bleeding and burning and stomach pain, and that during a three-week period from June 21, 2005 through July 7, 2005, Simonson failed to give him proper medical care. (*Id.*). Plaintiff states that on July 11, 2005, he had to threaten a hunger strike and had to repeatedly press the medical distress button in his SHU cell in order to force medical staff to provide him with medical care. At that time, Plaintiff states a rectal exam was performed and a fecal occult test was conducted which was negative for bleeding. (*Id.*).

In his Complaint (Doc. 1, p. 2) and in his Statement of Disputed Factual Issues (Doc. 45, pp. 1-2), Plaintiff admitted that immediately after ingesting glass, he was able to leave his work

23

at USP-Canaan and he was rushed "via emergency procedures" to "medical for treatment." In his Complaint , Plaintiff alleged that his Eighth Amendment rights were violated when Defendant Dr. Dalmasi allegedly "order[ed] a delay of two weeks [before treating him]."[18] (*Id.*). Plaintiff does not claim a complete denial of medical treatment since he was admittedly examined and treated immediately after ingesting what appeared to be glass. (Doc. 45, p. 1). Rather, Plaintiff complains about the adequacy of his treatment by Defendants Simonson and Dr. Dalmasi after he ate what he believed was glass in a cookie.   To the extent that Plaintiff disagrees with Defendant Simonson's and Dr. Dalmasi's course of treatment after his rectal bleeding began, this does not constitute a constitutional violation.[19]   Although Plaintiff disputes the adequacy of the treatment

---

[18]As we previously noted, it was not clear whether Plaintiff alleged in his Complaint that Dr. Dalmasi denied him access to institutional triage, or if both Dr. Dalmasi and Mr. Simonson dismissed Plaintiff's request for treatment.  Plaintiff averred in his Complaint as follows:

> [Plaintiff] went to medical for treatment.  Eight days later [Plaintiff] began bleeding from his rectum.  After requesting treatment from Mr. Symonsen (sic) at institutional triage and without examination [Plaintiff's] abdominal and anal pain and bleeding were dismissed.  Fourteen days later after deliberately ignoring [Plaintiff's] complaints of pain and bleeding [Plaintiff] was examined after the bleeding had subsided on July 10, 2005.  In deliberate indeifference (sic) to Plaintiff having previously been treated for abdominal discomfort after ingesting 'glass' after eating the Snack Legend Cookie, Dr. Dalmasi, who performed the examination[,] was deliberately indifferent to [Plaintiff's] complaint of rectal bleeding by ordering a delay of two weeks for treatment and examination of [his] rectal bleeding.

(Doc. 1, p. 2).

[19]We again note that the Complaint indicated Plaintiff's rectal bleeding stopped on its own less than two weeks after it began and that Plaintiff did not allege that he suffered any permanent or lasting injury from the rectal bleeding.

24

he received, he admits that he was not denied treatment completely.[20]

In *Goodrich v. Clinton County Prison*, 214 Fed. Appx. 105, 110-111(3d Cir. 2007), the

Court stated:

> A prison official's deliberate indifference to an inmate's serious
> medical needs constitutes a violation of the Eighth Amendment and states a cause
> of action under § 1983 *See, e.g., Estelle v. Gamble*, 429 U.S. 97, 104-05, 97 S.Ct.
> 285, 50 L.Ed.2d 251 (1976). The Eighth Amendment claim has objective and
> subjective components. First, the prisoner must show that his medical need is,
> objectively, sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct.
> 1970, 128 L.Ed.2d 811 (1994) (citation omitted). Second, he must establish that
> the prison official acted with subjective deliberate indifference, that is, that the
> official was aware of a substantial risk of serious harm to the prisoner but
> disregarded that risk by failing to take reasonable measures to abate it. *Farmer v.
> Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).
>
> A medical need qualifies as "serious" for purposes of Eighth Amendment
> analysis if, for example, "it is one that has been diagnosed by a physician as
> requiring treatment." *Monmouth County Corr. Institutional Inmates v. Lanzaro*,
> 834 F.2d 326, 347 (3d Cir.1987) (quotation and citation omitted). In
> addition, "if unnecessary and wanton infliction of pain results as a consequence
> of denial or delay in the provision of adequate medical care, the medical need
> is of the serious nature contemplated by the eighth amendment." *Id.* (quotation
> *111 and citation omitted). A mental illness may constitute a serious medical
> need. *Inmates of the Allegheny County Jail v. Pierce*, 612 F.2d 754, 763
> (3d Cir.1979) ("Although most challenges to prison medical treatment have
> focused on the alleged deficiencies of medical treatment for physical ills, we
> perceive no reason why psychological or psychiatric care should not be held
> to the same standard.).
>
> An inmate can show deliberate indifference" where, for example,
> "prison authorities deny reasonable requests for medical treatment ... and

---

[20]Plaintiff did not allege he was completely denied medical treatment for his rectal
bleeding.  Rather, he claimed that the treatment for his rectal bleeding was delayed for two
weeks by Dr. Dalmasi. Plaintiff averred that Dr. Dalmasi acted "in deliberate indifference to
[his] having previously been treated for abdominal discomfort..." (Doc. 1, p. 2). Thus, Plaintiff
admitted that he was not completely denied medical treatment. Instead, Plaintiff claimed that
he had to wait too long for follow up care by Dr. Dalmasi.

such denial exposes the inmate to undue suffering." *Lanzaro, 834* F.2d at 346 (quotation and citation omitted). Alternatively, deliberate indifference" is shown where knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care" or where"prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to [a] physician capable of evaluating the need for such treatment." *Id.* at 346-47 (quotations and citations omitted). It is clear, however, that allegations of negligence do not rise to the level of a constitutional violation. *Estelle,* 429 U.S. at 106, 97 S.Ct. 285. Finally, "whether or not a defendant's conduct amounts to deliberate indifference has been described as a classic issue for the fact finder." *A.M. ex. rel. J.M.K. v. Luzerne County Juvenile Detention Ctr.,* 372 F.3d 572, 588 (3d Cir.2004) (quoting *Nicini v. Morra,* 212 F.3d 798, 816 (3d Cir.2000) (Rendell, J., dissenting)).

Defendants' undisputed evidence, *i.e.* Plaintiff's USP-Canaan medical records attached to Bucklaw's Declaration (Doc. 34, Ex. 1 and attached 52 pages of Plaintiff's medical records), which this Court has held it would consider for purposes of the Summary Judgment Motions (*See* Doc. 53, December 10, 2008 Order), establish that Defendants Simonson and Dr. Dalmasi did not violate Plaintiff's Eighth Amendment rights by failing to provide him with proper and timely follow up medical care after he ate glass in a cookie and complained of rectal bleeding and stomach pain.

Defendants' uncontested evidence shows as follows:

> 4.      On June 13, 2005, Smith reported to medical staff and alleging that he "thought" he swallowed some glass while he was eating a cookie. *See* [Doc. 34, Ex. 1] Attachment 1 at pp. 35, 36, 45. An evaluation was completed by a physician's assistant and a medical doctor, and it was noted that no treatment was necessary at the time.  Oral and rectal examinations were performed, and both rendered negative results.  A faecal occult blood test was performed to evaluation (sic) possible gastro-intestinal bleeding, and this test was also negative.  All of Smith's vital signs were stable.  Smith appeared to be healthy and there were no signs of bleeding.  Smith denied any pain. *Id.*

5.     On June 20, 2005, an "Inmate Injury Assessment and Follow-up"
form was completed regarding Inmate Smith at the request of a USP Canaan
Lieutenant. *Id.* at p. 44.  Smith's vital signs were stable.  It was noted
that Smith had contusions and abrasions at the base of his skull, left
elbow, left hand, 3rd and 4th fingers, and a contusion to his left upper
arm. *Id.*  Smith received minor first aid, antibiotic ointment, and he was
educated on maintaining clean wounds. *Id.*[21]

6.     On July 11, 2005, Smith was evaluated by medical staff. *Id.* at
p. 35.  Upon examination, Smith complained of a "few episodes" of
rectal bleeding during bowel movements.  He stated that he did not
have any abdominal pains, but he did have "a little" rectal burning.
An occult blood test was again performed, and the findings were again
negative.  Smith was educated regarding a high-fiber diet, and he was
told to increase his fluid intake.  Upon completion of the examination,
the physician's assistant noted that there was no evidence of rectal
bleeding. *Id.* at p. 35.

7.     From July 2005 to this writing, Smith has been seen on
numerous occasions by institution medical staff for lower back pain
and for complaints of having a head cold and cold feet; however, he has
not expressed any further complaints of rectal bleeding. *See* medical
records generally.

(Doc. 34, Ex. 1, ¶'s 4.-7. and attached  pages of Plaintiff 's medical records, pp. 35-36, 45).

Additionally, Defendant Simonson declares as follows:

4.     [Smith] alleges that I failed to treat him for rectal bleeding.

5.     According to memory, I recall [Smith] when he was housed
in the Special Housing Unit ("SHU") at USP Canaan.  I was performing
triage when I spoke with Smith and he complained about rectal bleeding.
I noted his complaints by writing them on paper and informed Smith
I would provide his concerns to the Clinical Director.

6.     I had no further contact with Smith.

---

[21]The June 20, 2005 injury assessment form was completed after Plaintiff was allegedly
assaulted by another inmate (Ramsey).

(Doc. 34, Ex. 4, ¶'s 4.-6.).[22]

Thus, we find that the undisputed evidence shows that Defendant Dr. Dalmasi and Defendant Simonson[23] did not act in deliberate indifference to Plaintiff's condition after he thought he swallowed glass in a cookie. Plaintiff was immediately assessed and examined, and a fecal blood test was performed. Plaintiff also received follow-up care, and his blood test and exam were negative for rectal bleeding. Further, even if the evidence showed that Defendants were deliberately indifferent, which we do not find that it does, the evidence establishes that Plaintiff did not have a condition that was serious. (Doc. 34, Ex. 1, ¶'s 4.-7. and attached pages of Plaintiff's medical records, pp. 35-36, 45).

In the case of *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988), the Court addressed whether the Plaintiff's alleged injuries rose to the level of being sufficiently serious for the purpose of establishing an Eighth Amendment violation.

The *Monmouth County* case stated that:

> "A medical need is 'serious,' in satisfaction of the second prong of the *Estelle* test, if it is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Pace v. Fauver*, 479 F.Supp. 456, 458 (D.N.J. 1979), *aff'd*, 649 F.2d 860 (3d Cir. 1981); *accord Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D.N.H. 1977). The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment. For instance, *Estelle* makes clear that if

---

[22]Defendant Simonson's Declaration (Doc. 34, Ex. 4, ¶'s 4. and 5.) erroneously referred to Plaintiff as "Simonson."

[23]Defendant Simonson is currently a Health Services Administrator Trainee at FCC-Allenwood.

> 'unnecessary and wanton infliction of pain,' 429 U.S. at 103, 97 S.Ct. at 290, results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment. *See Id*, at 105, 97 S.Ct. at 291. In addition, where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious. (*Citations omitted*)."

*Monmouth County*, 834 F.2d at 347(3d Cir. 1987).

In *Monmouth, supra,* 834, F.2d at 347, the Court said that a medical need is serious if the delay or denial of health care results in "wanton infliction of pain, lifelong handicap or permanent loss." While Plaintiff averred Snack Legend's cookie caused him "fear of death and psychological trauma" (Doc. 1, p. 2), he did not state that his pain was severe and he did not claim that Defendants Simonson's and Dr. Dalmasi's alleged actions caused him excessive pain or permanent injury.[24] Moreover, Plaintiff's condition was not a "lifelong handicap or permanent loss" since the evidence shows that by July 11, 2005, he had only a few episodes of rectal bleeding when he had bowel movements, that he had no abdominal pain, and that he had only "a little rectal burning" and rectal discomfort. (Doc. 34, Ex. 1, attached page 35 of Plaintiff's medical records). After July 11, 2005, Plaintiff made no further complaints of rectal bleeding. (Doc. 34, Ex. 1, ¶'s 7. and attached pages of Plaintiff's medical records, pp. 35-36, 45).

Based on the *Estelle* test and the undisputed evidence, Plaintiff's condition was not "serious." *See Monmouth County* at 347. Further, based on *Goodrich*, Defendants were not deliberately indifferent to Plaintiff's condition afer he swallowed what he thought was glass. Plaintiff was examined after initially ingesting what appeared to be "glass" (Doc. 1, p. 2), and he

---

[24]In fact, the only adjective Plaintiff used for his abdominal pain in his Complaint was "discomfort." (Doc. 1, p. 2).

29

was examined again on July 11, 2005, and he was medically cleared of having any rectal bleeding.

Therefore, we will recommend that Defendants' Summary Judgment Motion be granted with respect to Plaintiff's Eighth Amendment denial of medical care claims against Defendants Simonson and Dalmasi.

## VII. Recommendation.

Based on the foregoing, it is respectfully recommended that Defendants' Summary Judgment Motion **(Doc. 32)** be granted with respect to the four remaining claims against all seven remaining Defendants and that Plaintiff's cross-Motion for Summary Judgment **(Doc. 43)** be denied.  It is also recommended that judgment be entered in favor of the remaining seven Defendants and against Plaintiff.[25]

s/ **Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: December 29, 2008**

---

[25]Notwithstanding the Plaintiff's *pro se* status and his request in his December 15, 2008 Reply Brief for leave to amend his Complaint, we do not recommend that he be permitted to amend his Complaint since we find, based upon the above discussions with respect to Plaintiff's remaining claims, futility of any amendment, and we shall not recommend Plaintiff be granted leave to amend his pleading. *See Forman v. Davis*, 371 U.S. 178, 182 (1982); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (The futility exception means that a complaint, as amended, would fail to state a claim upon which relief can be granted); *Alston v. Parker*, 363 F. 3d 229, 235 (3d Cir. 2004).  We also find that at this late stage of this June 2007 case, *i.e.* after both Defendants and Plaintiff filed summary judgment motions, Defendants would be greatly prejudiced if Plaintiff was permitted to amend his pleading since discovery would have to be re-opened.  Further, we note that Plaintiff only briefly states that he should be granted leave to amend to correct "the alleged personal involvement defects" of his Complaint. (Doc. 54, p. 5). However, we do not recommend that any of Plaintiff's remaining claims be dismissed due to his failure to state the personal involvement of any remaining Defendant.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BENJAMIN SMITH,                          :       CIVIL ACTION NO. **4:CV-07-1079**
                                         :
              Plaintiff                  :       (Judge Jones)
                                         :
        v.                               :       (Magistrate Judge Blewitt)
                                         :
UNITED STATES OF AMERICA, et al.,        :
                                         :
                                         :
              Defendants                 :

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing
**Report and Recommendation** dated **December 29, 2008.**

Any party may obtain a review of the Report and Recommendation pursuant to
Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within ten (10)
days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections.  The briefing
requirements set forth in Local Rule 72.2 shall apply.  A judge shall
make a *de novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


s/ Thomas M. Blewitt
THOMAS M. BLEWITT
United States Magistrate Judge

Dated: December 29, 2008